THOMAS MURPHY, Exr.

*v.*

RUBY BELLE RIGGS NOWAK.

*Opinion filed October 23, 1906.*

1. BENEFIT SOCIETIES—*when an alleged adopted daughter is the equitable beneficiary.* Where an application for membership in a benefit society directs the benefit fund to be paid to the applicant's wife, and there is an unsigned direction upon the back to pay to the applicant's wife in trust for the applicant's adopted daughter, naming her, and the certificate, when issued, makes the benefit fund payable to the wife in trust, as designated in such latter direction, which certificate is accepted by the applicant in writing and assessments paid by him without objection, the adopted daughter must be held to be the equitable beneficiary.

2. SAME—*when party is a dependent.* A child taken by a member and his wife from an orphan asylum when she was three years old and from that time forward treated as a daughter is a dependent during the period of her minority, or so long thereafter as the assumed relation of parent and child continues and her support is furnished by such member.

3. SAME—*when certificate of organization governs eligibility of beneficiaries.* If the certificate of organization of a benefit society is narrower than the statute under which the society is organized,

and excludes from the classes of eligible beneficiaries persons who would otherwise be eligible under the statute, the certificate of organization, and not the statute, will control.

4. Same—*subsequent by-laws and statutes may change contract.* If a member of a benefit society agrees, in his contract, that he will conform to the laws, rules and usages of the society then in force or which may subsequently be adopted, subsequent statutes and by-laws may be given a retrospective effect, even though they change the contract.

5. Same—*a person not a member of designated classes cannot take as beneficiary.* A person who does not come within any of the designated classes of eligible beneficiaries at the time of the death of the member cannot take as beneficiary, and in such case the fund should be paid to the member's heirs-at-law who are within the classes designated.

6. Same—*when person cannot take as a dependent.* Where by-laws of a benefit society preclude payment of the benefit fund to any person as a dependent unless the dependency be shown to exist at the time of the member's death and require written proof of that fact, one who was a dependent upon the member for a number of years but who is not dependent upon him for support at the time of his death is not entitled to take as a beneficiary though named as equitable beneficiary in the certificate.

Appeal from the Appellate Court for the First District;— heard in that court on writ of error to the Superior Court of Cook county; the Hon. Theodore Brentano, Judge, presiding.

The Catholic Order of Foresters, a fraternal insurance society, on the 19th day of April, 1905, filed a bill of interpleader in the superior court of Cook county against Mary A. Riggs, the testatrix of the appellant, and Ruby Belle Riggs Nowak, the appellee, to require said Mary A. Riggs and the appellee to interplead and settle their respective claims to the proceeds of a benefit certificate for $1000 issued by said Catholic Order of Foresters upon the life of John Riggs, who died January 17, 1905. Answers and replications were filed, and upon a hearing the court decreed that the amount of said certificate, less costs and attorneys'

fees, be paid to Mary A. Riggs. From that decree an appeal was prosecuted to the Appellate Court for the First District by Ruby Belle Riggs Nowak, where the decree of the superior court was reversed and the cause was remanded with directions to the superior court to enter a decree finding that said Ruby Belle Riggs Nowak was entitled to said fund, and Mary A. Riggs having departed this life testate while said cause was pending in the Appellate Court, the appellant, Thomas Murphy, the executor of said Mary A. Riggs, deceased, was substituted as appellee in her stead in the Appellate Court, and he has prosecuted an appeal to this court.

The case was tried upon a stipulation as to the facts, from which it appears that the Catholic Order of Foresters was incorporated under the laws of the State of Illinois on May 24, 1883; that the object of its incorporation was declared to be "to establish a widows' and orphans' benefit fund for the benefit of dependents of deceased members;" that on January 18, 1884, John Riggs, the husband of Mary A. Riggs, made a written application for membership in said order, in which application he directed that in case of his death all benefits to which he might be entitled should be paid to his wife, Mary A. Riggs, subject to such future disposal of the benefits among his dependents as he might direct, in compliance with the laws of the order, and agreed to conform in all respects to the laws, rules and usages of the order then in force or which might thereafter be adopted; that on the back of the application appeared the following unsigned direction: "Pay to Mrs. Mary A. Riggs, my wife, to be held in trust by her for my adopted daughter, Ruby Belle Riggs;" that John Riggs was duly admitted to membership in said order and to All Saints Court No. 9 thereof, on January 27, 1884; that a certificate bearing date December 18, 1884, was issued by said order to John Riggs, which recited it was made in consideration of the statements made by John Riggs in the application and to the medical

examiner, and that the member would comply in the future with the laws, rules and regulations then governing the order or that might thereafter be enacted, and provided that upon the compliance with said conditions the order would pay to "Mary A. Riggs, to be held in trust for his adopted daughter, Ruby Belle Riggs, $1000" if said member was in good standing and said certificate should remain in full force at the time of his death, which certificate was accepted in writing by John Riggs, as follows: "I accept this certificate on the conditions named.—John Riggs;" that the following rules and regulations of the said Catholic Order of Foresters went into effect on January 1, 1904, and were in force at the time of the death of said John Riggs:

"82. Benefits may be made payable to the following classes: Class 1: To the member's (1) wife; (2) children (including children by adoption) or children of deceased children (such children taking the share of the deceased parents); (3) grandchildren; (4) parents; (5) brothers and sisters of the whole blood; (6) brothers and sisters of the half blood; (7) grandparents; (8) nieces and nephews; (9) cousin in the first degree; (10) uncles and aunts; (11) next of kin who would be distributees of the personal estate of such member upon his death intestate, in either of which cases no proof of dependency shall be required before issuing the benefit certificate.

"83. Class 2: (1) To the member's affianced wife; (2) to any person who is dependent upon the member for maintenance, (food, clothing, lodging and education,) in which case written evidence of the dependency within the requirement of the laws of this order must be furnished to the satisfaction of the high secretary before the benefit certificate can be issued. * * *

"85. No benefit shall be payable to any person or persons of class 2, section 83, unless the dependency therein specified to be shown exists at the time of the member's death, in which case proof of such dependency at such time

must be furnished in writing to the satisfaction of the high court before payment of the benefit shall be made. If at the time of the death of a member any such dependency shall have ceased or shall be found not to have existed, or if the designation shall fail for illegality or otherwise, then the benefit shall be payable to the person or persons mentioned in class 1 of section eighty-two (82), if living, in the order of precedence as therein enumerated."

—that John Riggs at the time of his death was a member of said order in good standing, and left him surviving said Mary A. Riggs as his widow, Mary O'Brien, his sister, Hector Riggs, his brother, John J. Riggs, a nephew, Anna Woods, a niece, and Ambrose Houser, a nephew, his only heirs-at-law and next of kin; that the appellee, Ruby Belle Riggs Nowak, was not related by consanguinity or affinity to John Riggs, nor was she his adopted daughter by virtue of a decree of court; that at the age of three years, and in the year 1872, the appellee was taken by John Riggs and Mary A. Riggs from St. Joseph's Orphan Asylum to their home, where she was cared for, educated and reared, and where she remained until she was about twenty years of age, at which time she went to work, but occasionally returned to the Riggs home up to 1893; that after 1893 she was self-supporting and so continued to be up to 1904, when she was married; that John Riggs and Mary A. Riggs always treated the appellee as their daughter, held her out to the world as their adopted daughter and spoke of her as their adopted daughter, and John Riggs often expressed a desire and intention that she should have the benefit, upon his death, of the $1000 mentioned in said certificate, which expressions were repeated within a few weeks of his death.

THOMAS J. O'HARE, for appellant.

M. E. MAHER, and JOHN A. SWANSON, (AARON HEIMS, of counsel,) for appellee.

223—20

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended by the appellant that the appellee was not designated in the application, or otherwise, by John Riggs, as the beneficiary to whom the amount of the insurance issued upon his life by the Catholic Order of Foresters should be paid, and for that reason the Appellate Court wrongfully directed the superior court to enter a decree in favor of appellee. The application signed by John Riggs directed that the benefit fund received upon the certificate upon his death should be paid to Mary A. Riggs, his wife, subject to such future disposal among his dependents as Riggs might thereafter direct, and upon the back of the application was endorsed the unsigned direction, "Pay to Mrs. Mary A. Riggs, my wife, to be held in trust by her for my adopted daughter, Ruby Belle Riggs," and when the order issued to John Riggs the said certificate it made the beneficiary fund therein provided to be paid upon his death, payable to "Mary A. Riggs, to be held in trust for his adopted daughter, Ruby Belle Riggs," and when the certificate was delivered to John Riggs he accepted it in writing, over his signature, in the following form: "I accept this certificate on the conditions named." The certificate remained in force from 1884 to 1905, during which time John Riggs paid the assessments thereon without objection as to its form, and repeatedly stated while the certificate was in force that the fund provided to be paid, mentioned therein, upon his death would go to the appellee. In the application, while John Riggs directed that the amount of the certificate should be paid to his wife, he provided that the designation of his wife as beneficiary should be subject to such future disposal of the benefit fund among his dependents as he might thereafter direct. Had the direction endorsed upon the application been signed by John Riggs there can be no question but that such would have been a disposition of the beneficiary fund by Riggs within the terms of the application. Although the direction endorsed upon the applica-

tion was not signed by Riggs it was followed by the order in making out the certificate, and the certificate was accepted by Riggs in that form and retained by him for many years, during which time he recognized the certificate as correctly stating the beneficiary to whom he desired the fund paid at his death. In view of all these facts we think it clearly appears the Appellate Court properly held that the appellee was the equitable beneficiary named in the certificate issued upon the life of John Riggs by said order.

It is next contended that the appellee was not, within the meaning of the law, a dependent upon John Riggs, and that she cannot, therefore, take said beneficiary fund. It appears that the appellee was taken by John Riggs and Mary A. Riggs, his wife, from an orphan asylum when she was about three years of age, and that she remained in their home and was treated by them as a daughter until she attained the age of about twenty years and until she became self-supporting. As we understand the authorities, especially the case of *Alexander* v. *Parker*, 144 Ill. 355, there can be no reasonable contention made that the appellee was not a dependent upon John Riggs, within the meaning of the law, at the time he applied for membership in said order, and for many years thereafter. In the *Alexander case* (p. 366) it was said: "A dependent, as the term is used in reference to these benevolent associations, is one who is sustained by another or relies for support upon the aid of another." The appellee for many years after the order issued to John Riggs said certificate was supported and sustained by John Riggs, and, as we think, had the moral right to rely, and did rely, upon him for support. He had taken her when but three years of age into his family, and from that time forward he and his wife had treated her as their daughter. Clearly, the relations between the parties were such that the appellee could not have recovered for services rendered them during the years of her minority, neither could they have recovered from the appellee for the support, cloth-

ing and education which they furnished her during her minority or so long thereafter as they sustained the relation of parent and child towards each other. During that period she was, we think, a dependent upon John Riggs.

It is urged, however, that even though it be conceded that the appellee was properly designated as the equitable beneficiary in the application and certificate, and although it appears that she was a dependent upon John Riggs at the time the certificate was issued and remained such dependent for many years thereafter, she was not a dependent of his at the time of his death, and cannot, by reason of that fact, take such fund. It is the settled law of this State that when the statute under which a benefit society similar to the Catholic Order of Foresters is organized, and its charter, adopted in pursuance of such statute, designates certain classes of persons as those for whom a benefit fund is to be accumulated, a person not belonging to either one of such classes is not entitled to take the fund; that the corporation has no authority to create a fund for other persons than the classes specified, nor can a member direct the fund to be paid to a person outside of such classes. (*Alexander* v. *Parker, supra; Norwegian Old People's Home Society* v. *Wilson,* 176 Ill. 94.) It is also held that the beneficiary named in the certificate of such society acquires no vested right to the benefit to accrue upon the death of the member until such death occurs, and that a member, during his lifetime, may exercise the power to change or substitute a new or different beneficiary from the one named in the certificate at such time and upon such conditions as to him seems proper, subject only to the limitations and restrictions imposed by the organic law of the society or the rules and regulations adopted in conformity therewith. (*Martin* v. *Stubbings,* 126 Ill. 387; *Delaney* v. *Delaney,* 175 id. 187.) It is also held that upon the death of the member, where the person designated as beneficiary is outside of the classes eligible as beneficiaries, as fixed by the statute or charter of the society, the member's

heirs-at-law who are within the classes are entitled to the insurance. *Knights of Honor* v. *Menkhausen,* 209 Ill. 277.

From a consideration of the object for which benefit societies are formed, which is to afford protection to the family and dependents of the members of such societies after the death of the members, we are impressed that a person cannot take as a beneficiary unless he falls within one of the designated classes at the time of the death of the member. This view was taken by the Supreme Court of Massachusetts in the case of *Tyler* v. *Odd Fellows' Mutual Relief Ass.* 145 Mass. 134. The contest in that case over the fund was between a wife, who was named as beneficiary but who had been divorced by reason of the fault of her husband, and a son of the deceased husband. The court held that the wife having been divorced, she did not fall within the designation of wife at the date of the member's death and could not take. On page 136 it was said: "The principal object of the association manifestly is, as its members die from time to time, to provide for those nearest to them whom they leave behind. Each of the several expressions touching the persons to whom the moneys are to be finally paid has reference to the relation of such persons to the member at the time of his death. The language in the agreement of association, 'to the families of deceased members or their heirs,' the proviso limiting payments upon designations to 'heirs or members of the decedent's family,' and the word 'widow' in the next clause, are inconsistent with any other interpretation. Assuming, then, but not deciding, that the validity of a designation is to be determined at the outset with reference to the relation then existing between the member and his beneficiary, we think, to make it available after his death, there must then be a relation to the deceased such as is contemplated by the agreement of association and the by-laws relating to payment. * * * At the time of the death of L. E. Tyler, his former wife, Etta A. Tyler, was not a member of his family nor one of his heirs, but her connection

with him had been severed by the divorce. We therefore think she had lost her rights under the designation of her former husband, and was not entitled to anything from the defendant association after his death."

In *Order of Railway Conductors* v. *Koster,* 55 Mo. App. 186, the same view was taken by the Court of Appeals of the State of Missouri. It was there said: "A benefit certificate of this kind has some of the features of an insurance policy, but it also has its point of difference, and in the particular we are now considering it is testamentary in its character. The rule of the law of insurance, that if one has an insurable interest at the date of the policy the policy is not vitiated by termination of that interest, does not apply in a case like this. This act is testamentary in its character, in the respect that it speaks at the death of the member. As long as the lady * * * filled the description given in the certificate she was under its protection, but when she ceased to fill that description her interest in the certificate ceased. On the death of H. H. Koster the certificate, speaking for the first time, called for his wife, and there was none to answer."

In *Knights of Honor* v. *Menkhausen, supra,* the foregoing cases were cited and the doctrine therein announced approved. In that case the husband, who was the beneficiary, had taken the life of his wife, the insured, and it was held by such act he forfeited his right as a beneficiary. The court, on page 283, said: "The situation, so far as his rights and those of appellees and appellant are concerned, we think is precisely the same as though, after the issuance of this certificate, he had been divorced from Elizabeth Menkhausen and she had thereafter died without having any alteration made in the certificate. Under such circumstances he would have no interest in the certificate, but the proceeds thereof would be payable to the heirs of the insured, nothing to the contrary appearing in the certificate, the constitution and by-laws of the order or the laws of the State under which it

operates.—*Tyler* v. *Odd Fellows' Mutual Relief Ass.* 145 Mass. 134; *Schonfield* v. *Turner,* 75 Tex. 324; *Order of Railway Conductors* v. *Koster,* 55 Mo. App. 186."

The Catholic Order of Foresters was organized "to establish a widows' and orphans' benefit fund for the benefit of dependents of deceased members." From this language it would seem clear that the fund was only to be paid to "dependents of deceased members,"—that is, to a beneficiary who was dependent upon the member at the time of the death of the member. As said in the *Tyler case,* this language "has reference to the relation of such persons to the member at the time of his death." The contract of insurance was made between the order and the member, and the appellee having no vested interest in the beneficiary fund during the lifetime of the member, no contract obligation between the order and appellee, or between the member and the appellee, would be impaired by requiring the appellee to show she was a dependent at the time of the death of the member.

It is urged, however, the statute under which the Catholic Order of Foresters was organized is broader than the charter of that order, and that the appellee can take the fund in controversy under the designation of "devisee," found in the act of 1883, as that act was construed in *Martin* v. *Stubbings, supra,* and *Delaney* v. *Delaney, supra.* We do not think this contention can be sustained. In *Norwegian Old People's Home Society* v. *Wilson, supra,* on page 96, where the same contention was made, it was said: "There can be no question that the Norwegian Old People's Home Society was incompetent to take under the terms of the certificate of incorporation of the association. It could not in any way be held to be a member of the deceased's immediate family, and only such persons were competent to take. It is no answer to say that the statute of the State under which the association was organized was broad enough to permit such society to take. The incorporators of the

association chose to restrict the objects of its benevolence to the immediate family of the member, and the courts must construe the contract as they find it." And again: "The Policemen's Benevolent Association is an Illinois corporation, which has voluntarily chosen to restrict its benevolences to the immediate families of its members, and we must apply the restrictions found in the statement of the object of the association as specified in the certificate of incorporation, and not the statute itself in its broadest scope. It is obvious that there is nothing illegal or against public policy in the action of the association in narrowing the scope of its beneficial action." From what was said in that case, it is clear, in determining the classes who can take as beneficiaries, the court will look alone to the certificate of organization and not to the statute under which the society is organized, which may be broader in its terms than the certificate of organization of the benefit society organized thereunder. Furthermore, the application signed by John Riggs, and the certificate issued to him by the order, both provided that he would conform in all respects to the laws, rules and usages of the order then in force or which might thereafter be adopted. The act of 1893, relating to fraternal societies, (Hurd's Stat. 1905, chap. 73, par. 258, p. 1222,) provides: "Payments of death benefits shall only be paid to the families, heirs, blood relations, affianced husband or affianced wife of, or to persons dependent upon the member," and the order on January 1, 1904, adopted the by-laws numbered 82, 83 and 85, contained in the statement preceding this opinion, limiting the beneficiaries who might take under its certificates to the persons designated in the act of 1893, and provided by by-law 85 that "no benefit shall be payable to any person or persons of class 2, section 83, unless the dependency therein specified to be shown exists at the time of the member's death."

It is not in proof that the Catholic Order of Foresters ever took formal action to bring itself within the provisions

of the act of 1893. It does, however, appear from the averments of the bill and admissions of appellee's answer that such was the fact. Upon that subject it is averred in the bill that the Catholic Order of Foresters "is organized and doing business for the purpose of paying death benefits to the families, heirs, blood relations, affianced husband or affianced wife of or to persons dependent upon its members," and the answer of the appellee to such averment is, that it is admitted "complainant is a fraternal beneficiary society existing under the laws of the State of Illinois; that it is organized and doing business for the purpose of paying death benefits to the families, heirs, blood relations and to dependents of deceased members." If the act of 1893 and section 85 of the by-laws of the order, passed in 1904, apply to the certificate issued to John Riggs, as we think they do, then by the express provision of said by-law the appellee is excluded from receiving said benefit, as it is conceded the appellee was not dependent upon John Riggs for support at the time of his death.

It is urged, however, that the act of 1893 and the by-law of 1904 ought not to be applied so as to affect the appellee, as to so apply them would be to give them a retrospective operation. Such would doubtless be the rule if John Riggs had not expressly agreed they should be so applied. This he had the right to do, and having so agreed the appellee is not in a position to prevent their application. In *Baldwin* v. *Begley,* 185 Ill. 180, on page 188, it was said: "A party cannot claim the right to have a contract remain unaltered when the contract itself provides that it may be changed. Here, Turner agreed in his application, made in 1885, that he would 'conform in all respects to the laws, rules and usages of the order now in force or which may hereafter be adopted by the same.' In the certificate issued to him on June 22, 1885, the condition was imposed 'that the said member complies in the future with the laws, rules and regulations now governing the said order or that may

hereafter be enacted by said high court.' It thus appears by the terms of Turner's contract with the benefit society that he agreed to comply with such laws, rules and regulations as might be enacted by the high court of the society in the future. * * * The law or rule of the society which was adopted in August, 1894, and which went into effect on January 1, 1895, and which provided that the payment of death benefits should only be made to the families, blood relations, heirs, affianced wife of or to persons dependent on the member, and that such benefit should not be willed, assigned or transferred to any other person, comes within the terms of the contract made by Turner, and cannot be otherwise regarded than as one of those future laws or rules with which he agreed to comply."

The right of a beneficiary society to amend its by-laws so as to affect contracts already in force, where its contract with a member contains an express provision reserving to the society the right to amend or change its by-laws, which changes, it is provided, shall be binding upon the member, has been recognized by this court in numerous cases. In *Fullenwider* v. *Supreme Council of the Royal League,* 180 Ill. 621, on page 625, the court said: "The power to enact by-laws for the government of a corporate body is an incident to the existence of a body corporate and is inherent in it. The power to make such changes as may be deemed advisable is a continuous one. Where the contract contains an express provision reserving the right to amend or change by-laws it cannot be doubted that the society has the right so to do, and where, in a certificate of membership, it is provided that members shall be bound by the rules and regulations now governing the council and fund or that may thereafter be enacted for such government, and those conditions are assented to and the member accepts the certificate under the conditions provided therein, it is a sufficient reservation of the right in the society to amend or change its by-laws. * * * The contract requiring compliance with

any by-laws that might be thereafter enacted and the certificate being accepted with such a clause therein, there is no vested right of having the contract in the certificate remain unchanged, because the recognition of the power to make new by-laws is necessarily a recognition of the right to repeal or amend those theretofore made." In *Supreme Lodge Knights of Pythias* v. *Kutscher,* 179 Ill. 340, we recently held that a by-law forfeiting a claim for the death of a member of a benefit society, where the death of the member resulted from suicide, binds a member joining the society before the passage of such by-law, when his contract requires compliance with by-laws "now in force or that may hereafter be enacted." And in *Supreme Lodge Knights of Pythias* v. *Trebbe,* 179 Ill. 348, it was held that the enactment of a law by the supreme lodge of a benefit society which provides for the forfeiture of an endowment certificate upon the death of a member by suicide, binds a member whose contract requires compliance with all laws "now in force or that may hereafter be enacted by the supreme lodge."

From an examination of this record and the authorities which have been cited in the briefs of the respective parties we have reached the conclusion that the appellee is not entitled to receive the beneficiary fund deposited in court by the Catholic Order of Foresters, on the ground that she did not, at the time of the death of John Riggs, fall within any one of the designated classes for which that order was authorized by its charter to accumulate a beneficiary fund,—in other words, that the appellee was not a dependent of John Riggs at the time of his death.

The judgment of the Appellate Court will be reversed and the decree of the superior court affirmed.

*Judgment reversed.*