(No. 13514.—Judgment affirmed.)

LOUISA W. STEEN, Appellant, *vs.* THE MODERN WOODMEN
OF AMERICA, Appellee.

*Opinion filed December 21, 1920—Rehearing denied Feb. 3, 1921.*

1. CORPORATIONS—*power to enact by-laws is inherent and con-tinuous.* The power of a corporation to enact by-laws is inherent and continuous, and no one has a right to presume that by-laws will remain unchanged.

2. BENEFIT SOCIETIES—*documents making up the contract of insurance should be construed together.* The contract of insurance in a benefit society consists of the application of the member, the constitution and by-laws of the society and the benefit certificate issued to the member, and all should be construed together in ascertaining the rights of the parties.

3. SAME—*disappearance by-law construed.* Under a by-law of a benefit society providing that long-continued absence of a member shall not be regarded as evidence of death or give a right of recovery on the benefit certificate until the full term of the member's expectancy of life, as based on a specified mortality table, has expired, the member's expectancy of life must be calculated from his age on the date of his disappearance.

4. SAME—*a benefit society may reserve right to amend its by-laws.* A provision in the contract of insurance in a benefit society that the member shall be bound by the rules and regulations now governing the society or that may hereafter be enacted for such government, authorizes the society to change or amend its by-laws so as to bind all members accepting benefit certificates under such provision.

5. SAME—*courts will not interfere with by-laws unless there is an invasion of private rights.* The duly chosen and authorized representatives of the members of a benefit society alone are vested with the power of determining upon changes or amendments in its by-laws, and it is only when there is an abuse of discretion and a clear, unreasonable and arbitrary invasion of private rights that courts will assume jurisdiction of such matters.

6. SAME—*burden is on beneficiary to make proof of death.* In a suit against a benefit society to recover death benefits the burden is on the beneficiary to prove the death of the insured in accordance with requirements of by-laws to which the member has assented.

7. SAME—*contract of insurance may provide what shall constitute proof of death.* As there is no vested right in a rule of evi-

dence the contract of insurance between a benefit society and its member may provide what proof of death shall be furnished before the policy is payable, even to changing the established rule of evidence that death will be presumed after seven years' absence.

8. SAME—*by-law postponing presumption of death until after expiration of member's expectancy of life is valid.* The common law rule of presumption of death after seven years' absence will be enforced where parties have not contracted otherwise, but a by-law of a benefit society, assented to by its members, which does away with such presumption in disappearance cases and postpones settlement until the expiration of the member's expectancy of life in accordance with standard mortality tables is not unreasonable nor contrary to public policy and will be given effect.

9. CONTRACTS—*when contract is not void as against public policy.* A contract waiving constitutional or statutory rights or an established rule of law is not void on the ground that it is against public policy unless it is injurious in some way to the interests of society.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

VINCENT D. WYMAN, HARRY C. KINNE, CHARLES E. CARPENTER, and WALTER M. FOWLER, for appellant.

TRUMAN PLANTZ, GEORGE G. PERRIN, and GEORGE V. MCINTYRE, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Appellant filed her declaration in the superior court of Cook county against appellee, alleging that appellee is a corporation organized under the laws of this State for the purpose of providing death benefits to the beneficiaries of its members upon payment of certain assessments and compliance with certain requirements and conditions; that in 1897 appellee issued its benefit certificate to Albert F. Steen, which certificate named appellant as beneficiary; that on the 7th day of May, 1910, Albert F. Steen disappeared

from his home in the city of Chicago and has been unaccountably absent ever since; that he left with the intention of returning the same day but has never returned; that diligent and continuous search and inquiry have been made for him by appellant but she has been and is wholly unable to find or locate him; that on the 7th day of May, 1917, the absence of Albert F. Steen had continued seven years, and that Albert F. Steen was presumed by law to be dead; that Albert F. Steen died May 7, 1917; that appellant is the widow and beneficiary of deceased; that appellant notified appellee shortly after such disappearance and has since fully informed appellee concerning the same; that October 15, 1917, appellant gave appellee notice in writing of the disappearance and absence and requested payment of benefits under the certificate; that all required dues and assessments have been fully paid on behalf of assured up to and including May, 1917; that at the time of Albert F. Steen's death he was a member in good standing in appellee.

To the declaration appellee filed a plea of general issue and a special plea. The special plea averred the issuance of a certificate to assured; that appellee is a fraternal beneficiary society; that it makes provisions for payment of death benefits in case of the death of members in good standing; that the contract in question consists of the application, the by-laws and the benefit certificate; that at the time the assured made his written application for membership he contracted "to conform in all respects to the laws, rules and usages of the order now in force or which may hereafter be enacted and adopted by same, and that this application and the laws of this order shall form the sole basis of my admission to membership therein and of the benefit certificate to be issued me by said Modern Woodmen of America;" that in said application he was asked the following question and made the following answer: "7. Do you further understand that the laws of this order now in force or hereafter enacted enter into and become a

part of every contract of indemnity by and between the members and the order and govern all rights thereunder? Answer: Yes;" that the by-laws in force when the benefit certificate was issued were subsequently amended and modified, and from and after September 1, 1908, to the present time said by-laws have provided, among other things, in substance as follows:

"Sec. 64. *Action on certificates must be brought within eighteen months.*—No action for recovery on a death claim based upon any benefit certificate heretofore or hereafter issued by this society can or shall be maintained until after the proofs of death and claimant's rights to benefits, as provided in these by-laws, shall have been filed with the head clerk and passed upon by the board of directors, nor unless brought within eighteen months from the date of death of the member.

"Sec. 66. *Disappearance no presumption of death.*—No lapse of time or absence or disappearance on the part of any member heretofore or hereafter admitted into the society, without proof of the actual death of such member while in good standing in the society, shall entitle his beneficiary to recover the amount of his benefit certificate, except as hereinafter provided. The disappearance or long continued absence of any member unheard of shall not be regarded as evidence of death or give any right to recover on any benefit certificate heretofore or hereafter issued by the society until the full term of the member's expectancy of life according to the National Fraternal Congress Table of Mortality has expired within the life of the benefit certificate in question, and this law shall be in full force and effect, any statute of any State or country or rule of common law of any State or country to the contrary notwithstanding. The term, 'within the life of the benefit certificate,' as here used, means that the benefit certificate has not lapsed or been forfeited and that all payments required by the by-laws of the society have been made."

The special plea of appellee further averred that proof of the actual death of Albert F. Steen has never been furnished to appellee, and that the expectancy of life of Albert F. Steen according to the National Fraternal Congress Table of Mortality has not expired. To this special plea appellant filed a general demurrer, which was overruled. She elected to stand by her demurrer, and the superior court entered judgment in favor of appellee, which judgment was on appeal affirmed by the Appellate Court for the First District. That court granted a certificate of importance, and this further appeal has been prosecuted.

The only question presented by this appeal is the validity of section 66 of appellee's by-laws. Appellant contends that this by-law is void because its meaning is uncertain, it is unreasonable, and it is against the public policy and established law of the State. An able and exhaustive brief has been filed by learned counsel for appellant urging their views on these points, and we give attention to the points in the order stated.

Counsel argue, first, that this by-law is uncertain, unintelligible and so incomplete as to make it incapable of enforcement without a further provision in the by-law, contending that the by-law fixes no date or age of the assured at which his expectancy of life shall begin to run. Unless it can be determined from the by-law at what age the member's life expectancy is to be calculated it must be declared void, for the length or duration of such expectancy must be determined by the age of the member at the time fixed by the by-law to begin, for it is a matter of common knowledge that the expectancy of life of a person varies with every succeeding year of life. It is important that the beneficiary shall in some way be able to tell how many years she will be required to pay dues after the disappearance of the member, so that she may determine the wisdom of keeping the certificate alive or of letting it lapse. We think it clear from a consideration of the by-law and the

apparent purpose for which it was passed, that the age fixed at which the expectancy of life is to begin to run is the time of disappearance. The object of the by-law is to establish a rule of evidence in disappearance cases different from the seven years' absence rule established by the common law. The rule of evidence sought to be established is, that when a member disappears and nothing is heard from him he is presumed to live out his natural expectancy and at the end of his natural expectancy he will be presumed to be dead, but not until that time has arrived. This natural expectancy is to be determined according to the National Fraternal Congress Table of Mortality, a table recognized by the insurance departments and the courts of practically every State in the Union. The by-law has but one purpose and refers to but one time. The time to which it refers is the date of the disappearance of the member, and under the by-law the member's expectancy of life must be determined from the age of the member on the date of his disappearance.

It is further contended that the word "actual," used in connection with the word "death," adds nothing to the meaning of the latter word, and reliance is placed upon the language in *Gaffney* v. *Royal Neighbors,* (Ida.) 174 Pac. 1014, where the court, in passing on a by-law identical with the one now under consideration, said: "We are at a loss to determine what added force is given to the language by use of the word 'actual' in connection with the word 'death.' Every death is an actual death, and there is no such thing as constructive or presumptive death." Much of the argument is based upon the theory that this by-law excludes proof of death by circumstantial evidence. We do not think the by-law subject to this construction. The law is well settled in this State that death may be proven by circumstantial evidence, and we do not consider that the by-law attacks in any way that established principle. We think, however, there is a clear distinction between actual death

and death presumed by seven years' continued and unexplained absence. The word "actual" has a well understood meaning. It is something real or actually existing as opposed to something merely possible. Actual death is death existing in fact as distinguished from a constructive or speculative death established by a rule of evidence brought into being by necessity. If a man is actually dead,—that is, dead in fact,—he has reached a permanent state so far as worldly affairs are concerned and his business can be settled accordingly. On the other hand, if his death is determined under the seven years' absence rule he is dead only because the law establishes death for certain purposes. He may, in fact, be alive. Our statute on administration of estates recognizes the distinction between actual death and presumptive death, and provides that before distribution of the estate of one presumed to be dead each distributee shall give bond conditioned to refund to such presumed decedent, if alive, all property received by such distributee. (Hurd's Stat. 1917, p. 23.) This by-law provides that appellee will not pay the amount provided in the benefit certificate until there is filed, in accordance with its laws, proof of death in fact, or proof that the member has lived out his full expectancy of life, calculated from the time the member was last known to be alive. Its provisions are clear and the by-law is not void for uncertainty.

It is earnestly insisted by appellant that section 66 alters the contract of insurance and is therefore unreasonable. The contract in this case is the application of the member, the constitution and by-laws of the society, and the benefit certificate issued by the society to the member, and all are to be construed together. (*Fullenwider* v. *Supreme Council of Royal League,* 180 Ill. 621.) A person who enters an association must acquaint himself with its laws, for they contribute to the admeasurement of his rights, his duties and his liabilities. Where, as here, there is an express and clear reservation of the right to amend he is

bound to take notice of the existence and effect of that reserved power. The power to enact by-laws is inherent in every corporation as an incident of its existence. This power is a continuous one, and no one has a right to presume that by-laws will remain unchanged. Where the contract contains an express provision reserving the right to amend or change by-laws it cannot be doubted that the society has the right so to do, and where in the contract of insurance it is provided that members shall be bound by the rules and regulations now governing the society or that may thereafter be enacted for such government, and those conditions are assented to and the member accepts the benefit certificate under the conditions provided therein, it is a sufficient reservation of the right in the society to amend or change its by-laws. (*Murphy* v. *Nowak*, 223 Ill. 301; *Supreme Council of Royal Arcanum* v. *McKnight*, 238 id. 349; *Pold* v. *North American Union*, 261 id. 433; *Apitz* v. *Supreme Lodge Knights and Ladies of Honor*, 274 id. 196; *Supreme Lodge Knights of Pythias* v. *Mims*, 241 U. S. 574, 36 Sup. Ct. 702.) The duly chosen and authorized representatives of the members alone are vested with the power of determining when a change is demanded, and with their discretion, generally speaking, courts cannot interfere. Were it otherwise, courts would control all benevolent associations, all corporations and all fraternities. It is only when there is an abuse of discretion and a clear, unreasonable and arbitrary invasion of private rights that courts will assume jurisdiction over such societies or corporations. With questions of policy, doctrine or discipline courts will not interfere. *Supreme Lodge Knights of Pythias* v. *Knight*, 117 Ind. 489, 20 N. E. 479.

At the time this benefit certificate was issued there was a well established rule of evidence in this State that the unexplained absence of a person from home without having been heard from for seven years by those who would naturally have heard from him if he had been alive, although

diligent efforts were made to find him, raised a presumption of death, unless the circumstances of the case were such as to account for his not being heard of without assuming his death. (*Whiting* v. *Nicoll,* 46 Ill. 230; *Donovan* v. *Major,* 253 id. 179.) This is an arbitrary presumption, rendered necessary on grounds of public policy, in order that rights depending upon the life or death of persons long absent and unheard of may be settled by some certain rule. Jones, in volume 1 of his Commentaries on Evidence, (sec. 61,) says: "Thayer, in his usual thorough way, gives an interesting and instructive account of the presumption, and fixes its application in its present form as of 1805, and that it appeared for the first time in the text books in 1815 and was speedily followed by other eminent writers, ending in 1876 with Stephen. 'Here, then,' says Thayer, 'in seventy years we find the rule about a seven years' absence (1) coming into existence in the form of a judicial declaration about what may or may not fairly be inferred by a jury in the exercise of their logical faculty, the particular period being fixed by reference to two legislative determinations in specific cases of a like question; (2) passing into the form of an affirmative rule of law requiring that death be assumed under the given circumstances. This is a process of judicial legislation, advancing what is a mere recognition of a legitimate step in legal reasoning to a declaration of the legal effect of certain facts.' "

This legal presumption of death from seven years' unexplained absence arose by analogy under two early English statutes, the one exempting from the penalty of bigamy any person whose husband or wife should be continuously beyond the seas or should absent himself or herself for the space of seven years together, and the other providing that persons in leases for lives who shall remain beyond the seas or absent themselves from the realm for more than seven years shall, in the absence of proof to the contrary, be deemed naturally dead. That the rule in question is

merely a rule of evidence is unquestioned. (*Stevenson v. Montgomery,* 263 Ill. 93.) It is so treated by all the text book writers. It was a rule born of necessity, to prevent the prosecution for bigamy of a deserted spouse on the one hand and to settle the property affairs of the absentee on the other hand. It grew up in England at a time when travel was fraught with every danger known to man and when means of communication were primitive. Since this rule of law was established the social aspects of our civilization have been almost revolutionized. The improbability that accident, injury, sickness or death could overtake a member of this society without information of the fact reaching his family and friends is very great. In case of need he scarcely could fail to find assistance among the million members of his own fraternity. Hospital, police, burial and other records are collected and preserved in practically every State in this country and newspapers are published in every city and village, and, except for the reasons for which the law was originally established, there is now no sound reason for continuing the rule except that it has existed for so long a time that convenience makes it the best rule to follow where no other rule is established by statute or by agreement. The contract in question here is insurance on life, and the one essential fact necessary to mature this contract is the death of the insured. The burden is on the beneficiary to prove this death. The rule of law which appellant invokes is a rule of evidence and relates to the manner and quantum of proof necessary to establish death. By the common law rule a finding of the death of the insured will be sustained on proof of seven years' continued absence without intelligence of such absent person. Under the by-law in question such proof is not sufficient unless the absence has continued for a period equal to the member's expectancy of life. There is no vested right in a rule of evidence, and parties may by contract change an established rule of evidence and provide

296-8

that a different rule shall apply in determining controversies that may arise between the parties to the contract. (*Roeh* v. *Business Men's Protective Ass'n,* (Iowa) 145 N. W. 479; *Lundberg* v. *Interstate Business Men's Accident Ass'n,* (Wis.) 156 N. W. 482; *Cobble* v. *Royal Neighbors,* (Mo.) 219 S. W. 118.) In *Chicago, Burlington and Quincy Railroad Co.* v. *Jones,* 149 Ill. 361, we said: "No man or corporation has a vested right in the rules of evidence. They pertain to the remedies provided by the State for its citizens and do not constitute a part of any contract." To the same effect is our holding in *People* v. *Rose,* 207 Ill. 352, and in *Chicago Transfer Railroad Co.* v. *City of Chicago,* 217 id. 343.

The average duration of human life after any given age being now ascertained and stated in well authenticated tables, which have been recognized by the courts as safe rules in the calculation of the value of annuities and in other similar cases, no good reason is perceived why the same tables may not be accepted as furnishing ground legally to presume the death of a person after the lapse of the period of probable duration of his life, in the absence of any evidence to the contrary. These tables are scientifically made from actual experience in dealing with a given number of human lives at a given age. As we have said, the presumption of death on account of seven years' unexplained absence is an arbitrary rule, established by necessity, and has no basis in fact or in experience. The purpose of the by-law under consideration is not to do away with presumption of death on account of disappearance and continued absence, but is to substitute certainty for uncertainty, to displace guesswork by science, and to supplant groundless conjecture by actual experience. The record shows that Albert F. Steen was born in 1870 and joined the society in 1897. He was then 27 years of age, and according to the National Fraternal Congress Table of Mortality his expectation of life was then 40.2 years. He disappeared in 1910

and was then 40 years of age. According to the same table his expectation of life was then 29.9 years. This by-law, it will be seen, does not oust the courts of jurisdiction nor destroy the cause of action. In the instant case it merely delays the cause. Suppose, however, the member had been 74 years of age when he disappeared. Then, according to the table adopted by the by-law, his expectancy of life would have been seven years, and under those circumstances the rule fixed by the by-law and the common law rule of evidence would have established death at exactly the same time; but if the member had been 79 years of age at the time of his disappearance his natural expectancy of life would have been five years, or if he had been 85 years of age at the time of his disappearance his expectancy would have been three years, and if he had been 96 years of age his expectancy would have been one year. Under these circumstances it will be noted that the by-law provides a rule of evidence much more favorable to the beneficiary than the common law rule. The rule of evidence established by this by-law is for the mutual benefit of all the million members of this society. The insured had the benefit of this agreement as well as all other members, and his beneficiary must share its burdens. Parties have a right to agree as to what proof of death shall be furnished before the policy is payable. Appellee, as a legal entity, has no interest in this matter apart from its membership, because it is a society organized not for profit. The unjust losses that might be paid under the common law seven years' absence rule would fall on the members of the society. Appellee merely distributes the funds which are collected from the members. Where the common law rule is invoked for the purpose of settling title to property by administration or succession there is no incentive for the absentee to purposely absent himself and conceal his whereabouts, but rather the reverse. A by-law similar to the one challenged has been sustained in *Cobble* v. *Royal*

*Neighbors, supra;* in *McGovern* v. *Brotherhood of Locomotive Firemen and Engineers,* 21 Ohio Cir. Ct. 243, affirmed by the Supreme Court without an opinion, 85 Ohio St. 460, 98 N. E. 1128; in *Kelly* v. *Catholic Mutual Benefit Ass'n,* 46 App. Div. (N. Y.) 79, 61 N. Y. Sup. 394; and in *Porter* v. *Home Friendly Society,* (Ga.) 41 S. E. 45.

A disappearance by-law much more drastic in its terms was held valid by this court in *Apitz* v. *Supreme Lodge Knights and Ladies of Honor, supra.* The by-law there sustained provided that if a relief-fund member disappeared from his home and nothing was heard from him by his family or the secretary of his lodge and no information could be had concerning him after diligent inquiry, and such disappearance continued for the period of one year, said member stood suspended as in case of suspension for non-payment of assessments. Under a by-law like the one in the *Apitz case* the beneficiary would have no right to continue payment of the assessments in order to keep the certificate alive, and if the member should re-appear any time after the close of the first year's absence and should be unable to comply with the requirements of the society for re-instatement of members suspended for non-payment of assessments, then all rights under the contract would be lost. Under such a by-law, if a member between the ages of 75 and 96 disappeared and no intelligence of him was received for seven years, the beneficiary would not only lose the right to establish her case under the common law seven years' absence rule but would have no rights under the by-law. Under the by-law now being considered, if such a member disappeared the beneficiary could establish her case by proof of absence covering the member's expectancy of life, which would in all instances be less than seven years. In that case we held that the beneficiary has no vested interest in a benefit certificate, and where the contract between the member and the society reserves the right to the society to amend or change the by-laws, and the member agrees

to be bound thereby and accepts the certificate under those conditions, subsequently enacted by-laws are binding upon him. A by-law similar to the one held valid in the *Apitz case* was sustained by the Supreme Court of Maryland in *Royal Arcanum* v. *Vitzthum*, 97 Atl. 923. That by-law was even more drastic, in that it forfeited the certificate after six months' absence and failure to report.

We think any provision of a contract which tends to prevent unjust and fraudulent claims should be upheld. No insurance society could exist on reasonable rates if the face of the straight life policy were to become due at the end of seven years. As applied to life insurance the common law seven years' absence rule is without reason and is based neither on fact nor experience. While the common law rule will be enforced where the parties have not contracted otherwise, we think it not only reasonable but entirely sound from a business standpoint that the parties should contract to establish death in disappearance cases in accordance with tables scientifically made from experience. This by-law does nothing more than change a rule of evidence, and in that respect it is equally as reasonable as the by-laws approved in *Roeh* v. *Business Men's Protective Ass'n, supra,* and *Lundberg* v. *Interstate Business Men's Accident Ass'n, supra.* It is equally as reasonable as by-laws passed subsequently to issuing the benefit certificate and forfeiting the benefit when the insured changes his employment to certain prohibited occupations or commits suicide, and such by-laws have been sustained.

It is further urged that the by-law is void because it is against the public policy and established law of the State. In *Zeigler* v. *Illinois Trust and Savings Bank*, 245 Ill. 180, we said: "There is no precise definition of public policy, and consequently no absolute rule by which a contract can be measured or tested to determine whether or not it is contrary to public policy. Each case, as it arises, must be judged and determined according to its own peculiar cir-

cumstances. The public policy of the State or of the nation is to be found in its constitution and its statutes, and when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of the government officials." ."It is clearly to the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts, and therefore agreements are not to be held void as being contrary to public policy unless they are clearly contrary to what the legislature or judicial decision has declared to be the public policy or they manifestly tend to injure the public in some way." (13 Corpus Juris, 427.) We think the authorities generally agree that a contract is not void as against public policy unless it is injurious in some way to the interests of society. Surely, a contract which tends to prevent the payment of fraudulent or fictitious claims is not injurious to society. The member, Albert F. Steen, had the benefit of this by-law in that it protected the benefit fund from being weakened by the payment of fraudulent or fictitious claims, and his beneficiary must assume the burdens of the same contract under which she is indirectly benefited. The courts must act with care in extending those rules which say that a given contract is void because against public policy, since, if there is one thing more than any other which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into fairly and voluntarily, shall be held sacred and shall be enforced by the courts. Because a contract may waive constitutional or statutory rights or may change an established rule of law does not necessarily render it void on the ground that it is against public policy. In *Peoria Marine and Fire Ins. Co.* v. *Whitehill,* 25 Ill. 382, (original ed. p. 466,) this court held that an insurance company had the right in its policies to limit the time in which an action should be brought for a loss, and that the by-law was not

against public policy simply because it fixed a period less than that fixed by the Statute of Limitations. In *Pacaud* v. *Waite,* 218 Ill. 138, we held that parties may make valid and binding agreements to submit questions in dispute to the arbitrament of persons or tribunals other than the legally organized courts, and in *Dcibeikis* v. *Link-Belt Co.* 261 Ill. 454, this court laid down the rule that a contract waiving the constitutional right of a trial by jury was not against public policy. Much that we have said regarding the reasonableness of this by-law applies with equal force to the objection now being considered. The purpose of this by-law is to protect the members and their beneficiaries by protecting the benefit fund against doubtful and unjust claims. The time when a disappeared member will be presumed to be dead is based upon the actual experience of human life as shown by a standard table of mortality. We do not see how it can reasonably be said that a rule of evidence based upon human experience, rather than upon necessity and convenience, is contrary to public policy.

The Supreme Courts of other States passing upon this by-law, or others identical with it, have come to a conclusion directly opposed to the one we have reached. (*Haines* v. *Modern Woodmen,* (Iowa) 178 N. W. 1010; *Garrison* v. *Modern Woodmen,* (Neb.) 178 N. W. 842; *Sweet* v. *Modern Woodmen,* (Wis.) 172 N. W. 143; *Gaffney* v. *Royal Neighbors,* (Ida.) 174 Pac. 1014; *Hannon* v. *United Workmen,* (Kan.) 163 Pac. 169.) These are well considered opinions, but we think the conclusion reached in them violates sound and well settled principles of law, and we cannot adopt the views expressed by these able and distinguished courts.

For the reasons hereinbefore stated, the judgment of the Appellate Court is affirmed.          *Judgment affirmed.*