MOLLIE SHAPIRO, Plaintiff, *v.* INDEPENDENT ORDER, BRITH ABRAHAM OF UNITED STATES OF AMERICA, Defendant.*

Municipal Court of New York, Borough of Queens, Fifth District, November 28, 1934.

* Revd., 155 Misc. 9.

*Milton Wiesenberger*, for the plaintiff.

*Leon Sanders*, for the defendant.

MORRIS, J. The plaintiff and one Morris Shapiro intermarried in the city of New York in the year 1905.

Prior thereto, and some time in the year 1900, said Morris Shapiro was regularly admitted to and became a member of the H. Weiss Abraham Lodge No. 1, a subordinate lodge of the defendant herein. The defendant is a fraternal benefit insurance corporation, composed of many subordinate lodges.

On or about October 15, 1900, defendant issued to Morris Shapiro its benefit certificate No. 118867, wherein and whereby it agreed that, in consideration of the payment by said Morris Shapiro of the dues then due and of all dues, assessments and taxes thereafter to become due to said H. Weiss Abraham Lodge No. 1 and to defendant, it would pay the sum of $500 as a death benefit to the beneficiary or beneficiaries named by the said Morris Shapiro upon his death, provided that at the time of his death he should have complied with the constitution and laws of the defendant.

The plaintiff and Morris Shapiro lived together from the time of their marriage in 1905 until December 7, 1926, and there are two daughters, the issue of said marriage, one born in 1907, the other born in 1913.

On or about December 7, 1926, Morris Shapiro disappeared from his home and has never been seen nor heard from since.

The plaintiff made diligent search for her absentee husband, but no trace of him was ever found.

On or about April 2, 1934, plaintiff commenced a proceeding in the Surrogate's Court of Queens county to have said Morris Shapiro declared legally dead, and, after having duly established the necessary jurisdictional facts, a hearing was had before the surrogate of Queens county, who on July 2, 1934, duly signed a decree declaring Morris Shapiro legally dead.

The plaintiff, on the 23d day of July, 1934, served upon the defendant a certified copy of the surrogate's decree, declaring

Morris Shapiro legally dead, and offered to surrender defendant's death benefit certificate No. 118867 upon payment to her of the $500 death benefit, but the defendant returned the certified copy of the surrogate's decree to plaintiff, and refused to pay her the death benefit money on the ground that she had failed to comply with its constitution and laws so as to entitle her to said money.

The by-laws which defendant claimed were not complied with were adopted in 1928 and are as follows:

"No time of absence or disappearance on the part of the member without proof of actual death shall entitle his beneficiary or beneficiaries to receive the benefits hereinafter provided for." (Const. and By-laws, art. XIV, § 6.)

"No death benefit shall be payable until the claimant shall have complied with all the requirements of these laws, of the Executive Board and of the Death Benefit Committee." (Const. and By-laws, art. XIV, § 4.)

At the time of the commencement of this action Morris Shapiro was a member in good standing of the H. Weiss Abraham Lodge No. 1 and of the defendant, his dues having been paid by this plaintiff from the time of his disappearance in 1926 until the commencement of this action on August 6, 1934.

The question submitted to this court for decision is whether the plaintiff, on the above facts, is entitled to payment of the $500 death benefit from the defendant, or whether article XIV, section 6, of the constitution and by-laws of the defendant are a bar to her recovery.

The plaintiff's contention, briefly stated, is that she is entitled to recover, *first*, because the addition of article XIV, section 4, and of article XIV, section 6, constitution and by-laws, in 1928, thereby modifying the constitution and by-laws two years after Morris Shapiro disappeared and twenty-eight years after he joined as a member is not binding on the plaintiff; and, *second*, that even assuming but not admitting that the defendant under its constitution and by-laws had power to add article 14, section 4 and section 6, nevertheless because of the decree of the surrogate of Queens county and construing the phrase "proof of actual death" the overwhelming weight of authority favors a recovery by the plaintiff.

These contentions may best be answered by considering the last proposition first. In this State section 341 of the Civil Practice Act permits the presumption to be drawn from an unexplained absence of seven years that a person is dead. "He may not be dead, but he will be presumed to be dead for the purpose of fixing the rights of those known to be living" (*Matter of Wagener*, 143

App. Div. 286, 288), and for the purposes of the action it is not necessary that the court shall require evidence sufficient to warrant a finding or presumption of death. (*Matter of Heilweil*, 232 App. Div. 610.)

Assuming the contract between the parties to be that the benefit shall be paid to the beneficiary upon proof of actual death of Morris Shapiro and the plaintiff submitted proof that the Surrogate's Court of Queens county issued a decree declaring the assured legally dead, is the plaintiff entitled to payment?

A great many courts answer the question in the affirmative upon the theory that no corporation can by a provision in its regulations set aside a law of the State and make rules of evidence to suit its own ends and desires (*Sovereign Camp, W. O. W.* v. *Piper*, [Tex. Civ. App.] 222 S. W. 649), and that it would be impossible for a beneficiary to prove the death of the insured under these circumstances even though the fact of death would be presumed to exist under the established legal principles (*McCormick* v. *Woodmen of the World*, 57 Cal. App. 568; 207 P. 943, citing as authority cases in Michigan, Louisiana and Texas), while Missouri in *Cobble* v. *Royal Neighbors of America* (291 Mo. 125; 236 S. W. 306; 21 A. L. R. 1346) holds that a by-law which runs counter to the rules of evidence established by both common law and statute is void.

In *Kelly* v. *Supreme Council of Catholic Mutual Benefit Assn.* (46 App. Div. 79, at p. 82) Judge McLAUGHLIN clearly and distinctly states the law in this State: "Plaintiff's husband and the defendant had a legal right to agree as to the proof which should be furnished concerning his death before a liability to pay should arise. The presumption that death has occurred after a continued absence unheard from, for a period of seven years, is a rule of evidence. This presumption the parties have a perfect right to agree shall not apply, and that such absence shall not be evidence of death. The word 'actual' used in the certificate has a definite and well-understood meaning. It is something real, in opposition to constructive or speculative, something existing in fact. By its use the defendant manifestly intended to and did provide against liability in a case of speculative or presumptive death. In other words, it sought to provide against liability in just such a case as this. The parties, as we have seen, had a legal right to enter into an agreement of this character, and it cannot be said to be 'illegal, unreasonable, inconsistent with the objects and purposes of the corporation, or repugnant to the law, to public policy or to good morals.' "

The *Kelly* case was cited with approval in Illinois in *Steen* v. *Modern Woodmen of America*, decided in 1920 (296 Ill. 104; 129 N. E. 546), in *Becker* v. *Interstate Business Men's Acc. Assn. of*

*Des Moines* ([C. C. A.] 265 Fed. 508), while the Court of Civil Appeals of Texas declined to follow the *Kelly* case in *Supreme Ruling of Fraternal Mystic Circle* v. *Hoskins* (171 S. W. 812).

In view of the decision in the *Kelly Case (supra)*, the plaintiff is not entitled to a recovery if the defendant had the right to amend its by-laws and constitution.

This brings us to the other contention of the plaintiff, that article XIV, section 6, and section 4 of the constitution and by-laws of the defendant, adopted in 1928, two years after the disappearance of Morris Shapiro, are invalid and, therefore, do not relieve the defendant from liability.

In *Modern Woodmen of America* v. *White* (70 Col. 207; 199 P. 965; 17 A. L. R. 393) the Supreme Court of Colorado, in writing its opinion following what it contends is the weight of authority, held that, because the by-law was adopted after the certificate was issued, substantial rights which rest upon the contract cannot be abrogated by new by-laws, even where the power to make them is reserved. The court cited with approval similar doctrine as expressed by the Supreme Court of Wisconsin in *Sweet* v. *Modern Woodmen of America* (169 Wis. 462, 467; 172 N. W. 143), by the Supreme Court of Nebraska in *Garrison* v. *Modern Woodmen of America* (105 Neb. 25; 178 N. W. 842), by the Supreme Court of Minnesota in *Boynton* v. *Modern Woodmen of America* (148 Minn. 150; 181 N. W. 327; 17 A. L. R. 401), by the Supreme Court of Iowa in *Haines* v. *Modern Woodmen of America* (189 Iowa, 651; 178 N. W. 1010), and other cases in Texas and Iowa. The reasons stated in the Colorado case are (a) that the by-law was unreasonable and, therefore, invalid because it destroys or materially affects the rights of the member under the certificate; (b) that such a by-law interferes with one of the functions of a court in the matter of determining issues of fact.

The Supreme Court in Colorado declined to accept the reasoning or the conclusion reached in *Steen* v. *Modern Woodmen of America* (296 Ill. 104; 129 N. E. 546; 17 A. L. R. 406), which cited with approval the *Kelly Case (supra)*.

In the instant case Morris Shapiro agreed that he would comply at all times " with the constitution and laws of the order and the said lodge as they now exist, or as they hereafter may be amended, altered or modified all of which are to be taken as part hereof."

" The relator had a right to become a member of this corporation, and to agree to be governed by its charter and by-laws, and when he did so they expressed the contract by which he and every other member were bound, and which measured their rights, duties and liabilities as members thereof. (*Weston* v. *Ives*, 97 N. Y. 222;

*Belton* v. *Hatch,* 109 id. 593; *O'Brien* v. *Grant,* 146 id. 163, 173.) "
(*Matter of Haebler* v. *New York Produce Exchange,* 149 N. Y. 414, 427.)

The right to amend, alter or modify having been reserved in the certificate, article XIV, section 6, and article XIV, section 4, has a retroactive effect. (*Wright* v. *Knights of Maccabees of the World,* 196 N. Y. 391, 401.)

Judge CARDOZO, in *Steuernagel* v. *Supreme Council of Royal Arcanum* (234 N. Y. 251, at p. 257), states: "We find no merit in the argument that the amendment of the by-laws did not touch existing members. The application for membership and the certificate itself expressly pledge submission to by-laws thereafter adopted as well as by-laws then in force. We assume that even under such a contract, the power of amendment is not exempt from all restraint. The cases sometimes say that the power will not be extended so as to destroy a vested right. (*Evans* v. *Southern Tier Masonic Relief Assn.,* 182 N. Y. 453, 456; *Beach* v. *Supreme Tent of K. of M.,* 177 N. Y. 100, 104.) What is meant is that the change must be reasonable in nature and degree. (*Weber* v. *Supreme Tent of K. of M.,* 172 N. Y. 490, 494.) The distinction is between an amendment transforming the contract of membership in its fundamental scheme and purpose, and one affecting merely the forms and methods of administration, the course of practice and procedure, things incidental and subordinate rather than primary and essential. (*Ayers* v. *Ancient Order of United Workmen,* 188 N. Y. 280, 286; *Weber* v. *Supreme Tent of K. of M., supra.*) "

Can it be said that an amendment or modification requiring proof of actual death is unreasonable? The Appellate Division, First Department, in the *Kelly* case, has held that such an agreement, if made between the parties as to the proof to be furnished concerning death before a liability to pay should arise is not " illegal, unreasonable, * * * or repugnant to the law, to public policy or to good morals."

A by-law similar to the one challenged has been sustained in *Cobble* v. *Royal Neighbors of America* ([Mo. App.] 219 S. W. 118); *McGovern* v. *Brotherhood of Locomotive Firemen & Engineers* (31 Ohio Cir. Ct. 243; affd., 85 Ohio St. 460; 98 N. E. 1128); *Porter* v. *Home Friendly Society* (114 Ga. 937; 41 S. E. 45), and *Steen* v. *Modern Woodmen of America* (*supra*).

In *Steen* v. *Modern Woodmen of America* (*supra*) the Supreme Court of Illinois, following the reasoning in the *Kelly Case* (*supra*) states (296 Ill. 104, 119; 129 N. E. 552): " The purpose of this by-law is to protect the members and their beneficiaries by protecting the benefit fund against doubtful and unjust claims," con-

tending that it is not contrary to public policy to follow a " rule of evidence based upon human experience, rather than upon necessity and convenience," and that in a society organized not for profit " the rule of evidence established by this by-law is for the mutual benefit of all the million members of this society."

Such an amendment as in the instant case does not destroy a substantial right, but affects " merely forms and methods of administration, the course of practice and procedure," the manner or method to be followed to collect after death, and the character of proof to be submitted — a reasonable change to meet new conditions.

The Supreme Court of the United States has held that, where the member in his original application has agreed to conform to the laws of the order then in force or thereafter to be enacted, the society has the power, under the provisions of the United States Constitution, to change such laws even so far as to affect rights to the benefit fund. (*Supreme Council of Royal Arcanum* v. *Green*, 237 U. S. 531; 35 S. Ct. 724; 59 L. Ed. 1089; L. R. A. 1916A, 771; *Supreme Lodge, Knights of Pythias*, v. *Mims*, 241 U. S. 574; 36 S. Ct. 702; 60 L. Ed. 1179; *Supreme Lodge, Knights of Pythias*, v. *Smyth*, 245 U. S. 594; 38 S. Ct. 210; 62 L. Ed. 492.)

I find, therefore, that article XIV, section 6, of the constitution and by-laws of the defendant are a bar to the recovery by the plaintiff, and the plaintiff's complaint should be dismissed on the merits.