FLORENCE JANE FRANKISH, Appellant, v. CHARLES HAROLD FRANKISH, Also Known as HAROLD FRANKISH, Respondent.

First Department, July 6, 1923.

Husband and wife — action to dissolve marriage under Domestic Relations Law, § 7-a — Legislature had power to enact statute — plaintiff's petition and proof complied with statute.

The Legislature had power to enact section 7-a of the Domestic Relations Law providing that a party to a marriage may present to the Supreme Court a duly verified petition showing that the husband or wife of such party has absented himself or herself for five successive years then last past without being known to such party to be living during that time and to provide for the dissolution of the marriage relation after the expiration of that period upon a petition presented under said section supported by proper proof. In this case the petition and proof thereunder were sufficient to satisfy the requirements of the statute.

APPEAL by the petitioner, Florence Jane Frankish, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of January, 1923, dismissing her petition for an order dissolving her marriage with the defendant upon the ground of his absence for five successive years last past.

*Leopold Freiman*, for the appellant.

No appearance for the respondent.

MARTIN, J.:

This proceeding is based upon section 7a of the Domestic Relations Law (as added by Laws of 1922, chap. 279). The petition alleges, and it was established by the proof, that plaintiff is a resident of the city of New York; that in 1901 she married the defendant in the city of Toronto, Can., where they resided until 1905; that petitioner and her husband moved to the city of Buffalo, N. Y., and resided at various addresses in that city; that she has ever since been a resident of the State of New York; that the defendant was christened Charles Harold Frankish, but was known as Harold Frankish.

There were three children born of the marriage, Harold and Verna, both born in Toronto, and Helen, born in Buffalo.

In the latter part of the year 1907, while petitioner and the defendant were residing at No. 555 High street, in the city of Buffalo, the defendant without giving the petitioner any notice or warning and without any cause abandoned her.

By reason of that desertion, plaintiff was left destitute; without

means to support herself and her children. She sent them to her mother for care and attention so that she might earn a livelihood.

The defendant, without legal authority and by stealth and trickery, took the children from the possession and home of plaintiff's mother and departed with them to parts unknown.

Thereafter petitioner communicated with the police authorities of the city of Buffalo and the city of Toronto, and made diligent effort to find him. She caused searches to be made continually for the past ten years, but has been unable to find defendant or the children, or to ascertain their whereabouts. She further testified that she has been unsuccessful in obtaining any information which might cause her to believe her husband to be still alive, and she, therefore, believes him to be dead.

Plaintiff says she believed defendant's father and mother were dead, because she knew nothing about them. The only relative of his that she knew was a sister living in Toronto.

After his disappearance she went to Buffalo, N. Y., where she made inquiries in reference to defendant and whenever she was in Buffalo on other occasions she made inquiries. Before this proceeding was commenced the plaintiff caused to be inserted in a Buffalo newspaper an advertisement which was admitted in evidence, marked Exhibit I, which is as follows: " Information desired of whereabouts of Harold Frankish. Communicate with Leopold Freiman, 1540 Broadway, New York City."

She never received any response to this advertisement, nor, since the abandonment in 1907, has she heard from her husband or children.

In her investigation in Buffalo she went to No. 46 Seventh street where she resided for two months when she first went to Buffalo. She made inquiries there, but those from whom she inquired knew nothing about the defendant. She then went to No. 211 Prospect street, and again made inquiries, but no one knew the defendant or of his whereabouts. She then went to No. 49 Sydney street, with the same result. She then went to No. 21 Interpark avenue and was unable to obtain any information about defendant. She then went to No. 19 Beach street, where they lived for a few months, then to No. 555 High street, where he deserted her, but she could find no one who knew the whereabouts of the defendant.

Before commencing this proceeding, plaintiff went to Toronto, Can., to see defendant's sister, in an endeavor to secure information as to his whereabouts, but his sister was unable to help her.

The defendant had no particular business. He did little odd jobs, such as selling goods and doing electrical jobs. Plaintiff says

she had no quarrel with defendant and that there was no reason for his deserting her.

After hearing the proof the trial justice dismissed the petition, stating as follows: " Petition is dismissed, without prejudice, for reasons stated in opinion filed this day in *Schubert* v. *Schubert.*"

The opinion referred to is as follows: " This is an application under section 7a of the Domestic Relations Law, which provides for ' an order dissolving a marriage on the ground of absence.' This ' Enoch Arden Law,' so called (Chap. 279, Laws of 1922), is an anomaly in the legislative history of the State, and a strict compliance with its terms is required before such extraordinary relief may be granted. It must clearly appear from the petition, supported by proof at a hearing, that the absentee has not been known to the petitioner to have been living at any time during the five years immediately preceding the presentation thereof, and that the absence has been under such circumstances as would give rise to a presumption of death. The ' diligent search ' made, and upon which must be based the belief ' that such husband or wife * * * be dead,' must be with the intent ' to discover evidence showing that such husband or wife is living,' and must be sufficiently thorough to warrant the conclusion that ' no such evidence ' can be reasonably found."

Under the section of the law quoted, a petitioner is required to file a petition setting forth facts showing that a party has been absent for five successive years without being known to such petitioner to be living during that time, and must sustain the petition by proof of the facts alleged.

Section 7a of the Domestic Relations Law as added by chapter 279 of the Laws of 1922, provides: "A party to a marriage may present to the Supreme Court a duly verified petition showing that the husband or wife of such party has absented himself or herself for five successive years then last past without being known to such party to be living during that time; that such party believes such husband or wife to be dead; and that a diligent search has been made to discover evidence showing that such husband or wife is living, and no such evidence has been found; * * * and if the court, after the filing of proof of the proper publication of said notice and after a hearing and proof taken, is satisfied of the truth of all the allegations contained in the petition, it may make an order dissolving such marriage."

The plaintiff in this case filed a petition complying with the law and submitted evidence to sustain its allegations. It was shown that for upwards of fifteen years the defendant had been absent and that nothing whatever had been heard from him; that diligent

search had been made by the plaintiff to find defendant, evidently. with a view to compelling him to support her, and that all attempts to locate him had failed.

It is not unusual for the Legislature to enact laws regulating important civil rights made necessary by reason of the continuous absence of a husband or wife.

Section 6 of title 5 of chapter 1 of part 2 of the Revised Statutes (1 R. S. 749) provides as follows:

" § 6. If any person, upon whose life any estate in lands or tenements shall depend, shall remain beyond sea, or shall absent himself, in this State or elsewhere, for seven years together, such person shall be accounted naturally dead, in any action concerning such lands or tenements, in which his death shall come in question, unless sufficient proof be made in such case, of the life of such person."

It is also provided by section 6 of title 1 of chapter 8 of part 2 of the Revised Statutes (2 R. S. 139) as follows:

" § 6. If any person whose husband or wife shall have absented himself or herself, for the space of five successive years, without being known to such person to be living during that time, shall marry during the life time of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority." (See also Dom. Rel. Law, § 7, subd. 5; rep. by Laws of 1922, chap. 279.)

The Code of Civil Procedure (§ 841) provided, and the Civil Practice Act (§ 341) provides, as follows:

" § 341. * * * A person possessed of personal property in this State or upon whose life an estate in real property depends, who remains without the United States, or absents himself in the State or elsewhere for seven years together, is presumed to be dead, in an action or special proceeding concerning such property or the administration of the estate of such person, unless it is affirmatively proved that he was alive within that time."

The subject has also been referred to by writers on surrogate's practice. In Jessup-Redfield Law and Practice in Surrogates' Courts (p. 367, § 329) it is said: " The common-law rule was that the continuance of life should be presumed until the contrary was shown. But the present rule which has been commonly acted upon by surrogates, and is now generally accepted, is, that when a party has been absent seven years since any intelligence of him has been received, he is in contemplation of law presumed to be dead."

The same subject was discussed in *Price* v. *Price* (124 N. Y. 589, 596) where the court said: " The primary question underlying this case is whether, when a wife absents herself from her husband

for five successive years without being known by him to be living within that time, and he contracts a second marriage which is annulled in an action between them because the first wife is living, such second wife is entitled to dower in the real estate owned by him at the date of the entry of the judgment of nullification?

" By chapter 2 of the first year of James the First,* it was enacted that a person marrying a second time, whose husband or wife has been continually absent for seven years immediately preceding the second marriage and not known by such person to be living within that time, should not be guilty of bigamy. The rule prescribed by this statute has remained the law of England to this day. (4 Steph. Com. [11th ed.] 90.) A statute containing the same provisions, though reducing the period of absence to five years, was enacted in this State February 7, 1788 (2 J. & S. 214), which with slight modifications has been continued in force to the present time. (1 Rev. Acts of 1801, 122; 1 Rev. Laws of 1813, 112; 2 R. S. 687; Penal Code, §§ 298, 299.)† "

In *Matter of Matthews* (75 Misc. Rep. 449, 451), with reference to the presumption of death because of continuous absence, the court said: " The presumption of death, both in this State and in the original home of the common law, is as follows: That, in the failure of proof to the contrary, a person shall be taken to be dead, when such person has been absent seven years and not heard from. As so formulated it is, however, a modern rule or presumption. It is thought to take its beginning in England with the decision in the case of *Doe d. George* v. *Jesson*, 6 East, 80, in January, 1805, and to have been founded by analogy on the Bigamy Act of James I‡ and of the act 19 Charles II, chap. 6,|| ' for redress of inconveniences by reason of the absence ' of a *cestui que vie*, or one on whose life some estate in remainder depended. These English acts raised certain presumptions of death after a continuous absence of seven years. In this State similar statutes were re-enacted and continue on our statute book. 1 R. S. 749, § 6; 2 id. 687, § 9; Code Civ. Pro. § 841. Consequently, by analogy a similar presumption to

---

* See 1 Jac. 1, chap. 11; 9 Geo. 4, chap. 31, §§ 1, 22; 24 & 25 Vict. chap. 95, § 1; Offences against the Person Act, 1861 (24 & 25 Vict. chap. 100), § 57; 9 Halsbury's Laws of England, 532, § 1075.— [REP.

† See Laws of 1788. chap. 24; 2 J. & V. 214; 1 K. & R. 122; 1 R. L. 113; 2 R. S. 687, §§ 8, 9; Penal Code. §§ 298, 299; Penal Law, §§ 340, 341.— [REP.

‡ See 1 Jac. 1, chap. 11.— [REP.

|| Also known as 18 & 19 Charles 2, chap. 11. See N. Y. Laws of 1788, chap. 10, § 1.— [REP.

that recognized in England since 1805 is sometimes raised in our courts in the course of the administration of justice.''

It appears, therefore, that the subject is not a new one. The presumption of death from continuous absence has long been recognized by the Legislature and courts of this and many other jurisdictions. The Legislature being within its power when it passed the law herein reviewed, it is our duty to apply the law to the facts proved, with a view to its enforcement. The petition filed herein having contained the jurisdictional facts, and proof having been adduced which was uncontradicted and apparently truthful sustaining those facts, it was the duty of the court to grant the relief prayed for.

The order should, therefore, be reversed and the relief prayed for granted.

CLARKE, P. J., SMITH, MERRELL and McAVOY, JJ., concur.

Order reversed and relief prayed for granted. Present order for settlement.