In the Matter of the Application of MANUEL A. SANTOS, for an Order Dissolving His Marriage to JULIA S. SANTOS.

Supreme Court, Oneida County, August 14, 1928.

**Husband and wife — dissolution of marriage, under Domestic Relations Law, § 7-a — parties were not married in this State and did not reside here — plaintiff's wife abandoned him in Portugal — plaintiff has resided here for five years last past — plaintiff may maintain proceeding.**

The petitioner may maintain this proceeding to have his marriage dissolved, under section 7-a of the Domestic Relations Law, since it appears that while the parties were not married in this State and never resided here, the petitioner, following the abandonment of him by his wife in Portugal, has resided in this State for a period of five years prior to the commencement of this proceeding.

*It seems*, that where a marriage was not contracted in and under the laws of this State, but the parties, married elsewhere, move into this State and acquire a matrimonial domicile herein, the abandonment should have taken place during such domicile, and that the residence of the abandoned spouse should be continuous within this State for the full period of five years, before the courts of this State should assume jurisdiction under section 7-a of the Domestic Relations Law.

PROCEEDING for dissolution of marriage under section 7-a of the Domestic Relations Law (as added by Laws of 1922, chap. 279).

*Herbert L. Gilroy*, for the petitioner.

SMITH, J. The petitioner, Manuel A. Santos, in October, 1917, at New Bedford, Mass., married Julia S. Santos, and they there resided as husband and wife for a period of about three years; in December, 1920, they went to Lisbon, Portugal, and, excepting for a time when they lived in the islands of the Azores, they continued to live in Lisbon until the summer of 1922; in August, 1922, and while they were living in Lisbon, the wife disappeared and

has not been seen or heard from or of, directly or indirectly, by the petitioner since that time. The petitioner made diligent search for his wife for several months in Lisbon, and then, thinking that possibly she might be found at the Azores, went to said islands and made diligent but fruitless search for her, then returned to Lisbon, making renewed search for her there, without result, and then, thinking that possibly she had returned to America to the place of their marriage, he came to New Bedford, Mass., and made diligent search for her there for two months without result. Both parties were at the time of the marriage citizens of Portugal. In February, 1923, the petitioner came to Utica, N. Y., to reside and has resided there continuously since that time up to the 2d day of March, 1928, at the date of the petition, and there resided at the time of the hearing herein.

The departure of his wife was due to no fault on the part of the petitioner; he has made continuous and diligent effort to find her, has searched all available sources of information without result, and now believes and is justified in the belief that she is dead. If the court has jurisdiction, the facts warrant the granting of the prayer of the petitioner.

This marriage contract was not entered into in this State; the parties never had a matrimonial domicile here. Under such circumstances can the court assume jurisdiction; and if so, under what conditions may jurisdiction be assumed? Section 7-a of the Domestic Relations Law contains no specific provision as to the conditions of jurisdiction. It reads: " A party to a marriage may present to the Supreme Court a duly verified petition showing that the husband or wife of such party has absented himself or herself for five successive years *then last past* without being known to such party to be living during that time; that such party believes such husband or wife to be dead; and that a diligent search has been made to discover evidence showing such husband or wife is living, and no such evidence has been found. The court shall thereupon by order require notice of the presentation and object of such petition to be published *in the same manner as required for the publication of a summons in an action in the Supreme Court where service of such summons is made by publication;* * * * and if the court, after the filing of proof of the proper publication of said notice and after a hearing and proof taken, is satisfied of the truth of all the allegations contained in the petition, it may make an order dissolving such marriage."

This proceeding is anomalous in jurisprudence, not only in respect of method but also in respect of substance. A new procedure has been adopted and a new method has been provided for the abroga-

tion of a marital contract. In view of the social nature of such contracts, there is no question as to the legislative power to prescribe the conditions under which the relationship created by the contract may be dissolved. This of course would be clear as to contracts entered into within and pursuant to the laws of the State of New York. A marriage contract entered into within the bounds of this State is impressed with the laws of the State as they exist at the time of the contract. They would likewise be subject to all amendments which are purely remedial or procedural in character. But is this true of a statute which creates a ground for the dissolution of the marriage which did not exist at the time of the contract? Instances are not lacking where, after orders of dissolution have been granted, the parties " believed to be dead " have appeared. Under such circumstances, is the contract constitutionally abrogated; and, in reference to property rights, what are the consequences? These questions are not here for determination, for it has been held that the Legislature had the constitutional power to enact this law and that it is applicable to contracts entered into prior to the enactment. (*Frankish* v. *Frankish*, 206 App. Div. 301.) That decision has been followed by the Special Term of this State. But the questions are asked for the purpose of presenting the difficulties which confront us in determining the conditions of jurisdiction. It is assumed that the court in *Frankish* v. *Frankish* (*supra*) correctly states the law. In that case the marriage contract was entered into in Canada, where the parties resided together for four years and until 1905, when they moved into this State and established therein a matrimonial domicile; a child was born of the marriage in this State; in 1907 the husband departed and for over fifteen years his whereabouts were unknown. The case, therefore, is authority for the proposition that the courts of the State have jurisdiction over marriages contracted without the State, where the parties had acquired a matrimonial domicile within the State, and where they were living at the time of the disappearance of one spouse, and where the abandoned spouse continued to live within the State up to the time of the bringing of the proceeding under section 7-a of the Domestic Relations Law.

The section contains no specific provision as to the conditions under which the court shall acquire jurisdiction in these proceedings. It says: " a party to a marriage," and on its face this covers any marriage, wherever contracted. There is no express provision as to the length of time that the party bringing the proceeding must reside within the State prior to instituting the proceeding or that there must be a matrimonial domicile or a marital status within

the State.  On its face, anyone, residing anywhere in the world, can come to the State of New York and institute the proceeding the day after arrival; and yet it would do violence to the evident purpose of the Legislature of this State, where divorce is as difficult as in any other State in the Union, to assume that it intended by this procedure to afford the easiest kind of method for unscrupulous parties to procure freedom from matrimonial bonds.

The courts, therefore, have been forced to inquire as to what conditions must exist in order that the act, having been held to be within legislative power, may be held applicable to a particular state of facts.  Clearly, the circumstances must be such that the court has jurisdiction of the marital status, for in this proceeding of course no jurisdiction can be acquired of the person of the named respondent, for, once acquired, there would be no basis for the proceeding; the proceeding is not one *in personam*, but rather one *in rem* and addressed to a status.

We are aided somewhat in the consideration of this subject by the history of the legislation which led up to the enactment of section 7-a of the Domestic Relations Law.  That section became effective March 25, 1922.  Prior to its enactment, section 6 of the Domestic Relations Law provided as follows: " A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either:

" 1.  *  *  *

" 2.  *  *  *

" 3. Such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time."

Section 7 of said law provided as follows: " A marriage is void *from the time its nullity is declared by a court of competent jurisdiction* if either party thereto

" 1.  *  *  *

" 2.  *  *  *

" 3.  *  *  *

" 4.  *  *  *

" 5. Has a husband or a wife by a former marriage living and such former husband or wife has absented himself or herself for five successive years then last past without being known to such party to be living during that time."

The act (Laws of 1922, chap. 279) which enacted section 7-a substituted, in place of the above-quoted subdivision of said section 6, the following: " 3. Such former marriage has been dissolved pursuant to section seven-a of this chapter," and repealed subdivision

43

5 of said section 7. No longer does the presumption of death after five years absence of a husband or wife without being known to be living during that time authorize the abandoned spouse to remarry, and no longer does a marriage under such circumstances, where as a matter of fact the husband or wife was living, become void only "from the time its nullity is declared by a court of competent jurisdiction;" such a marriage is absolutely void if entered into prior to the dissolution of the former marriage as provided in said section 7-a.

The law now is that the question as to the death of the absent party must be passed upon by the court; it is no longer left, as formerly, to the mind of the individual concerned; having once determined that the facts warrant the belief of the death, the court is given power to "make an order dissolving such marriage." Of course if the party was and was known to be dead there would be no occasion for the order, but it is in cases of the inability of the remaining spouse to prove that the absent party actually is dead, where circumstances exist which form a basis for the belief that he or she is dead, that the court is authorized to make an order dissolving the marriage; this order is effective even if it should subsequently appear that the absent party was at the time alive. Furthermore, the legislation has a humanitarian purpose and is based upon the proposition that if one party to a marriage leaves his or her spouse for five years without reason and without knowledge of his or her continued existence it is unjust that the abandoned party should be for the balance of his or her life deprived of the privilege of entering into a new marital relationship. The purpose is beneficent and far removed from any legislative intent to make this State a forum for the dissolution of marriages wherever contracted and where there has been no matrimonial domicile or marital status within this State. So much is clear.

The decisions on the subject of the bases of jurisdiction are somewhat confused. (*Matter of Niemi*, 223 App. Div. 466; *Dodge v. Campbell*, Id. 471.)

In *Matter of Niemi* (*supra*) the Appellate Division in the Second Department reversed an order denying an application for an order of publication under said section 7-a in a case where the parties were married in Finland in 1920 and where the husband deserted the wife in August, 1922, and where the wife had come into this State and resided here for more than one year. Two of the sitting justices express opinion as follows: " She resides and has resided in this state for more than one year; and while the legislature has made no requirement as to residence, still, *in the analogous case of an action for an annulment, a domicile may be maintained where*

*the parties have been married without the state and the plaintiff is a
resident of the state and has been a resident of the state for one year
preceding the institution of the action.*   *  *  *   The legislature has
not said that the marriage must have been contracted in this state,
or that the husband must have resided here, and, under the circum-
stances, I am of the opinion that the petition was sufficient to give
the court jurisdiction of the proceeding   *   *   *." Two of the
justices concurred in the result, but on a different ground, stated as
follows: " All the statutory provisions relating to actions for divorce,
separation or annulment of marriage specifically require a plaintiff
to show jurisdictional facts, such as residence or marriage within
the state, or the like.   Section 7-a of the Domestic Relations Law
(as added by Laws of 1922, chap. 279), however, provides for
dissolution of a marriage because of continued absence of a spouse
for five years or more, without making any such requirement.
Despite this omission, that section contemplates the existence of a
matrimonial domicile within the state; that the *res* of the matri-
monial status sought to be dissolved are within the state.   If the
statute be not so read, it would offend the Due Process of Law
Clause of the United States Constitution,   *   *   *.  Here,   *   *   *
there is sufficient in the petition, for the purposes of the order
sought herein, to sustain *prima facie* the view that the petitioner
was deserted by her husband in Finland.   That fact, if sustained by
evidence, enabled her to claim that the *res* of the matrimonial status
were possessed by her and could be carried into another jurisdiction.
She may, therefore, claim in this case to have brought the *res* into
New York State, of which state she alleges she is a resident.   This
fact would give jurisdiction to sustain the granting of an order of
publication herein."   The fifth judge sitting in the case dissented
and voted to affirm the order of the Special Term on the ground
" that the allegations of the petition are insufficient to show that
the court has jurisdiction of the subject-matter thereof."   This
case does not determine the conditions upon which jurisdiction
may be acquired, two of the justices expressing the view that one
year's residence within the state was essential, on the analogy
of an action for annulment, and two that the fact of residence was
sufficient.

In *Dodge* v. *Campbell* (*supra*) the Appellate Division in the
Third Department, in a case where the parties had been married
in Pennsylvania, and where their separation there occurred, and
the wife instituted her proceeding under section 7-a within but
when she had not acquired a residence in this State, held that
under such circumstances it " would not have had jurisdiction
against him " (the husband).   The opinion states: " It thus appears

that the construction of section 7-a of the Domestic Relations Law is the vital question in this case. There has never been a case in the appellate courts where this question has been directly passed upon, but at Special Term several decisions are found holding that the court has not jurisdiction under this section where the marriage sought to be dissolved was not performed within this state and the parties never had a marital domicile here and where the respondent neither was served in this state nor appeared." The opinion by way of analogy cites *Berlinsky* v. *Berlinsky* (204 App. Div. 480), in which it was held that the court acquired no jurisdiction in an annulment action where the plaintiff was a resident of this State and the defendant a resident of Maryland when the action was commenced by the service of the summons by publication. This decision, however, was prior to the enactment of section 1146-a of the Civil Practice Act, which made one year's residence within the State a fact necessary to give jurisdiction in actions for annulment. On the analogy of the decision in *Berlinsky* v. *Berlinsky*, and in view of the fact that section 7-a of the Domestic Relations Law contains no specific provision as to the facts essential in order that that jurisdiction may be acquired, the said Appellate Division (in *Dodge* v. *Campbell, supra*) held as follows: " Unless a statute should so specifically provide *we think the jurisdictional facts necessary to give the courts of this state jurisdiction over defendants in actions brought for divorce or separation must be established to entitle a petitioner to an order of dissolution under section 7-a.* A dissolution order under this section is the equivalent of an absolute divorce. We do not think the Legislature intended to open our courts to all comers who may desire a divorce or its equivalent; or to disregard the general rule that ' the courts of this State have no power to adjudge the status of parties residing beyond its jurisdiction.' (*Gray* v. *Gray*, 143 N. Y. 354, 357.) Until the Legislature acts, as it has now in respect to annulment actions, we think any other intention should not be presumed."

There is no analogy between an action for annulment and this proceeding for an order of dissolution of marriage, as suggested in *Matter of Niemi* (*supra*). Annulment is based upon the existence of facts at the time of the marriage which rendered the marriage either void or voidable. Section 7-a of the Domestic Relations Law presupposes a valid marriage. In *Dodge* v. *Campbell* (*supra*) the court suggests that the conditions of jurisdiction prescribed as to separation and divorce actions should govern. Here again is an effort to establish conditions of jurisdiction by analogy where no analogy really exists. A reading of the conditions of jurisdiction in separation and divorce actions shows that none of them has

any application as a basis of jurisdiction in a proceeding under said section 7-a, under the facts disclosed in the instant proceeding. If jurisdiction there be, it must be found within and through the provisions of section 7-a itself, plus the rulings in applicable decisions of the courts in matrimonial cases.

So it seems that the question of jurisdiction, under the circumstances of this case, is before the court for an original determination. It is unnecessary to cite authority for the proposition that where parties to a foreign marriage have actually acquired a matrimonial domicile within the State of New York, so far as remedial measures are concerned the laws of this State become applicable and judgments of divorce, separation and annulment thereunder are binding, absolutely, where there has been personal service of the summons within this State, or where there has been personal appearance in the action where the summons was served by publication, and are binding within the State of New York in the case of jurisdiction acquired by publication alone; in the last instance upon the ground that the State acquired jurisdiction over the marital status and that its laws govern the parties in their marital relations so long as the marital status is maintained within this State. A legal fiction has been created and recognized by the Supreme Court of the United States and by the courts of this State, in decisions unnecessary here to cite, that the marital status constitutes a *res*, and that, the *res* having been brought within this State, the court acquires jurisdiction of the *res* and the laws of this State become applicable and binding, at least within the confines of this State.

Here there never was a matrimonial domicile within this State; the parties were married in Massachusetts, lived there a while, then in Portugal, but never resided together as husband and wife within this State. It has been established by abundant authority, however, that where a wife abandons her husband without the latter's fault the husband is not bound to remain at the place of matrimonial domicile at the time of abandonment but may change his residence and carry the marital status with him into any other State. It is unnecessary here to consider the conditions under which an abandoned wife may likewise carry with her the marital status. Under the facts of the instant case, the petitioner herein did bring with him the marital status to this State and has had it with him here continuously for more than five years; the wife had violated her duty in that, without fault on the part of her husband, she left him; and so, when the petitioner came into this State, he brought with him the *res* of the marital status and the court did acquire jurisdiction over that marital status, and that

status, so long as maintained here, became impressed with the laws of this State affecting matrimonial relations.

There is left for our consideration only the question of the period of time that the petitioner must have been a resident of this State in order to give to him the right to invoke the provisions of section 7-a of the Domestic Relations Law.

The basis for the order of dissolution is that " The husband or wife of such party has absented himself or herself for five successive years *then last past* without being known to such party to be living during that time." The words " then last past " refer to the date of the petition. I am of the opinion that, taking into consideration the purposes of the act, the failure to make specific provision, and the fact that jurisdiction arises through the existence of the marital status within this State, it is essential, under the circumstances of this case, that such status be maintained by the petitioner continuously within this State for the full period of the absence, to wit, for five successive years next prior to the making of the petition. The condition of jurisdiction is the existence of the marital status within this State. The marital status, the *res*, must be maintained continuously within the State during the full five years of absence next preceding the date of the petition. It would be absurd to hold that a person could come into this State, reside here for a day, and thus acquire a right to institute a proceeding to dissolve a marriage contract entered into in another jurisdiction; the Legislature had no such intention; this proceeding is not so transitory. It is the unjustified absence of the wife of the petitioner which makes impossible the existence of a matrimonial domicile within the State and which gives our courts jurisdiction of the marital status brought into the State by the abandoned husband. The *res* of the marital status must be and continue in the State for the period of absence required by the statute as the basis of this proceeding, in order that the courts of the State may acquire jurisdiction in this proceeding.

While the question is not necessary for decision in the instant proceeding, it is also my view that where a marriage was not contracted in and under the laws of this State, but the parties, married elsewhere, move into this State and acquire a matrimonial domicile herein, the abandonment should have taken place during such domicile, and that the residence of the abandoned spouse should be continuous within this State for the full period of five years, before the courts of this State should assume jurisdiction.

The statute, so read, becomes a consistent whole, and I believe this construction of it accords with the legislative intent and should be followed until the Legislature shall have made more specific

provision. Such an interpretation on the one hand does not make the courts of the State of New York an open forum for the dissolution of foreign marriages, and on the other hand carries out the humanitarian purposes of the act.

The petitioner has met the test here laid down, and the prayer of the petition should be granted and the marriage of the petitioner dissolved.

Ordered accordingly.