In the Matter of the Application of WILLIAM HEILWEIL, Appellant, for an Order for the Dissolution of His Marriage with HELEN FRANCES HEILWEIL, Respondent.

First Department, June 12, 1931.

*William L. Brody* of counsel [*John T. DeGraff* with him on the brief; *Julius Hallheimer*, attorney], for the appellant.

No points submitted by the respondent.

SHERMAN, J.   Petitioner brings this proceeding for the dissolution of his marriage under section 7-a of the Domestic Relations Law (added by Laws of 1922, chap. 279), upon the ground that his wife had absented herself for more than seven successive years without being known to him to be living during that time and that, all attempts to find her having proven unavailing, he believes her to be dead.

Before the learned official referee to whom this matter was referred, the petitioner testified that after marriage in March, 1920, in New York city, the parties lived together at No. 108 West Sixty-ninth street, for about a year and a half, when on September 3, 1922, she left him and disappeared.   When he returned home on that day, he found his trunk ransacked and his personal belongings taken, a note left by his wife stating: "I am gone.   No need to look for me."   The only communication thereafter received from her was inclosed in an envelope bearing the post-mark "Detroit, Michigan, September 13, 1922," viz.: "Just a line to let you know that I'm O. K. as I promised, but think it best that this should be the last.   You may think that what I did seemed mean, but we were both unhappy and you will soon forget me, brace up, give yourself plenty of work, hope you feel better."

There is no issue of the marriage.

Petitioner was manager of a restaurant in New York city at the time of the marriage.   Respondent's occupation had been the renting and exploiting of concessions at carnivals.   After marriage, she took a position at this restaurant as hostess.   She told petitioner that her father and mother were dead, and that she had an uncle living somewhere in Pennsylvania, but she had never disclosed her uncle's address and had been reticent about her family.   About six days after her disappearance, petitioner discovered that she was at No. 249 West Fifty-second street, in New York city.   Petitioner went to that address and showing a photograph of his wife to the landlady there learned that she had stayed there for a few days, living with another man.

The record amply justifies the referee's finding that "petitioner has made diligent and frequent efforts to discover evidence of whether respondent is now alive or whether she has been known to be alive during the time since her disappearance, by making inquiries at her former place of residence and of mutual friends." The learned official referee, however, concluded that petitioner was

not entitled to a final order dissolving his marriage because " there is no sufficient evidence, in view of the respondent's deliberate desertion of her husband to warrant the conclusion that she is dead."

The decision below rests upon the erroneous view that the trier of the facts must be satisfied from the evidence that the departed spouse is dead before the order of dissolution of marriage may be granted.

But the necessity of showing facts from which arise a presumption of death is not to be found in section 7-a of the Domestic Relations Law, which reads as follows:

" § 7-a. Dissolution of marriage on ground of absence. A party to a marriage may present to the Supreme Court a duly verified petition showing that the husband or wife of such party has absented himself or herself for five successive years then last past without being known to such party to be living during that time; that such party believes such husband or wife to be dead; and that a diligent search has been made to discover evidence showing that such husband or wife is living, and no such evidence has been found. The court shall thereupon by order require notice of the presentation and object of such petition to be published in the same manner as required for the publication of a summons in an action in the Supreme Court where service of such summons is made by publication; such notice shall be directed to the husband or wife who has so absented himself or herself and shall state the time and place of the hearing upon such petition, which time shall be not less than twenty days after the completion of the publication of such notice; and if the court, after the filing of proof of the proper publication of said notice and after a hearing and proof taken, is satisfied of the truth of all the allegations contained in the petition, it may make an order dissolving such marriage."

By the enactment of this statute the Legislature provided a new method by which the marriage relation may be terminated upon proof of five years' absence, without knowledge that the absent spouse be living, provided the petitioning husband in good faith believes her dead and a diligent search had been fruitless to discover that she was living. He may then enter into another marriage which would have validity.

The statutes in existence at the enactment of the present statute must be considered. Former section 6 of the Domestic Relations Law provided that " A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either: * * * (3) Such former husband or wife has absented himself or herself for five successive years then last past

without being known to be living during that time." Subdivision 3 of that section was amended by chapter 279 of the Laws of 1922, to read as follows: " 3. Such former marriage has been dissolved pursuant to section seven-a of this chapter."

Former section 7 of the Domestic Relations Law provided: " A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto: * * * 5. Has a husband or wife by a former marriage living, and such former husband or wife has absented himself or herself for five successive years then last past without being known to such party to be living during that time." Subdivision 5 of that section was eliminated by section 2 of chapter 279 of the Laws of 1922. Part of its language is found in the present statute (section 7-a of the Domestic Relations Law).

Petitioner would have had the right to remarry under the former sections of the Domestic Relations Law (§§ 6 and 7) if his wife had absented herself for five successive years without being known to him to be living. The marriage itself was voidable under section 7. The effect of the amendatory legislation is that the second marriage, when entered into after a dissolution by court order of the prior marriage, is valid. No longer does a marriage contracted by an individual whose spouse has been absent for five years without being known to him to be living become void only " from the time its nullity is declared by a court of competent jurisdiction; " the marriage is void *ab initio* if contracted without an order of dissolution previously obtained under section 7-a. The legislative aim apparently was to make the new union lasting rather than subject to being declared void, and the order is effective even if it should subsequently be shown that the deserting spouse was actually alive.

If the Legislature had intended that the court should require evidence sufficient to warrant a finding or presumption of death before the dissolution proceeding could succeed, it would have said so. Section 341 of the Civil Practice Act permits such presumption to be drawn from an unexplained absence of seven years. No such language is found in the present statute or even in its predecessor, and the court may not read that requirement into the act. What is made of controlling importance is the good faith of the petitioner in bringing the proceeding and in believing that his wife was dead, together with proof of the exercise of proper diligence by him in an effort to locate her and find proof that she is alive. The jurisdictional facts being sufficiently shown, all that petitioner was required to do was to satisfy the court " of the truth of all the allegations contained in the petition."

Petitioner's good faith cannot well be denied. Not he, but his wife, was the deserter. The element of desertion was considered an important fact in *Frankish* v. *Frankish* (206 App. Div. 301), where proceedings were brought under the present statute and relief was granted by this court. Proof of desertion, however, does not make the statute unavailable to the deserted spouse. It is a circumstance to be considered in passing on all the facts, including the good faith of petitioner, his honest belief in her death, and the sincerity of the efforts made to find her. As stated by the Appellate Division, Second Department, in *Matter of Lane* v. *Lane* (232 App. Div. 690), in reversing an order denying the petitioner's application for an order of publication under section 7-a: "The fact that continued absence of the missing spouse for five years last past was preceded by a voluntary desertion does not, as a matter of law, preclude a dissolution of the marriage."

Another case which points to the view that proof amounting to a finding of death is not a prerequisite to dissolution of marriage under section 7-a of the Domestic Relations Law, is *Ruckert* v. *Lasher* (209 App. Div. 672; affd., 240 N. Y. 578). There, plaintiff agreed to sell to defendant certain real estate in Brooklyn, plaintiff describing himself in the contract as unmarried, having theretofore obtained an order dissolving his marriage with Emily S. Ruckert under section 7-a of the Domestic Relations Law; defendant refused to accept title, and the court held that he was justified in refusing to take title on the ground that the former wife's dower in the premises sought to be conveyed was not barred by the order of dissolution.

Apparently, petitioner's good faith is, as above set forth, unquestioned. He searched for evidence of respondent at her former places of residence in New York city, questioned their mutual friends, inquired at various hotels, restaurants and amusement parks in Detroit, Mich., consulted the City Directory and invoked the aid of the police department in that city. He made inquiry at her former places of employment in New York city, at the branch post office at Sixty-ninth street and Amsterdam avenue in New York city, at the Health Department in all five boroughs in New York city, and at the morgue, and inserted many personal advertisements in the New York *Times* during November, 1929. It is not suggested that he should have done anything further to find her. All the provisions of the statute having been complied with and his belief in her death appearing to be sincere and honest, petitioner was entitled to the relief sought.

"The petition filed herein having contained the jurisdictional facts, and proof having been adduced which was uncontradicted and

apparently truthful sustaining those facts, it was the duty of the court to grant the relief prayed for." (*Frankish* v. *Frankish*, *supra*, 306.)

The order appealed from should be reversed and the relief prayed for granted.

FINCH, P. J., and TOWNLEY, J., concur; MERRELL and O'MALLEY, JJ., dissent.

MERRELL, J. (dissenting). The ground upon which the present proceeding was instituted for the dissolution of said marriage was that the petitioner's wife had absented herself for five years, and that the petitioner had made diligent search to ascertain her whereabouts and to discover evidence that his said wife was living, and that no such evidence had been found. An order was made upon the petition for the publication of notice upon the wife, pursuant to section 7-a of the Domestic Relations Law. The matter was sent to an official referee to determine and report the facts and his conclusion thereon to the court. The learned official referee made his decision wherein he found and decided that the petitioner is a resident of the State of New York and had resided here for upwards of one year prior to the commencement of this action; that the petitioner and his wife, Helen Frances Heilweil, were married on March 24, 1920, in the city, county and State of New York; that from March 24, 1920, to September 3, 1922, they had been living together as husband and wife at their residence 108 West Sixty-ninth street; that there was no issue of said marriage; that on or about September 3, 1922, the petitioner came home, found his trunk ransacked, his personal belongings taken, and also a note written by respondent, saying: "I am gone. No need to look for me." The referee further found that subsequently the petitioner received a letter from his wife without any address, except the post-mark, Detroit, Mich., as follows:

" Dear BILLY:

" Just a line to let you know that I'm O. K. as I promised, but think it best that this should be the last. You may think that what I did seemed mean, but we were both unhappy and you will soon forget me, brace up, give yourself plenty of work, hope you feel better.

" HELEN."

The referee further found as follows:

" (7) That petitioner has made diligent and frequent efforts to discover evidence of whether respondent is now alive or whether she has been known to be alive during the time since her disappearance, by making inquiries at her former place of residence and of

mutual friends, but there is no sufficient evidence, in view of the respondent's deliberate desertion of her husband to warrant the conclusion that she is dead. (See *Matter of Entenman*, 122 Misc. 441; *Matter of Parrinello*, opinion of NEWBURGER, J.; Official Referee, New York Law Journal, June 13, 1930.)"

As conclusion of law the learned official referee decided that the petitioner was not entitled to a final order dissolving his marriage to Helen Frances Heilweil, respondent, pursuant to section 7-a of the Domestic Relations Law, and dismissed the petition. The court at Special Term thereupon made the order appealed from dismissing the proceeding on the merits, without costs.

The petitioner, appellant, asks reversal of the order appealed from, and that an order be entered dissolving the marriage existing between the parties. Under the provisions of section 7-a of the Domestic Relations Law it is provided that if the court " after a hearing and proof taken, is satisfied of the truth of all the allegations contained in the petition, it may make an order dissolving such marriage." The report of the learned referee very clearly shows that the referee was not convinced that the petitioner had made sufficient efforts to discover evidence as to whether the respondent was then alive, or whether she had been known to be alive during the time since her disappearance, and that there was no sufficient evidence, in view of respondent's deliberate desertion of her husband, to warrant the conclusion that she was dead. It is urged by appellant that the death of the wife need not necessarily be shown, and that under the statute generally known as the " Enoch Arden Law " it is sufficient to show the absence of five years or more and diligent but unsuccessful efforts of the petitioner to locate his spouse. I do not think such interpretation of the statute is correct. The statute itself is based upon the assumption that the spouse who has disappeared is dead, and the absence of five years or more is to be taken as evidence of her death. It goes without saying that unless petitioner's wife was actually dead he had no right to the dissolution of their marriage in this proceeding. In a very well-considered opinion by Mr. Justice MULLAN in *Matter of Entenman* (122 Misc. 441), cited by the learned official referee in his report, a dissolution was denied under very similar circumstances to those presented in the case at bar. In that case the wife, as here, left home leaving a letter addressed to the petitioner stating that she was going away to work for herself and to find peace by going to work for herself, and stating that the wife would be better off by herself because she was never coming back, and that petitioner need not look for her. Under such circumstances, as here, it was held that the leaving by the wife was

not an indication of her death, but rather of her desire to live separate and apart from her husband. The case of *Frankish* v. *Frankish* (206 App. Div. 301), a decision of this court wherein Mr. Justice MARTIN wrote for the court, was discussed by Justice MULLAN. In that case, among other things, Mr. Justice MARTIN stated (at p. 302), with reference to the circumstances under which the defendant departed, that he left " * * * by stealth and trickery, took the children [of the marriage of the parties] from the possession and home of plaintiff's mother and departed with them to parts unknown." Justice MULLAN stated in his opinion in the *Entenman* case (at p. 442), referring to the proof upon which the petitioner relied: "That proof might seem to permit the implication, not that the disappearing husband had died, but that he was concealing his whereabouts so as to be free from the molestation of his wife, and thus be able to retain the custody of the children. In that respect the facts there seem to lead, almost as clearly as do the facts here, to the conclusion that the disappearing spouse was purposely keeping in hiding. It is, of course, obvious that the stronger the ground is for such a belief, the weaker must be the ground for a belief that the absent spouse has died. Except, therefore, for ceertain very significant language in the opinion in the *Frankish* case, I should feel compelled to hold that in the case of an absence of five years proof of an unsuccessful diligent search would alone require the granting of the dissolution prayer, wholly regardless of the age or physical condition of the disappearing spouse or of the reason or cause of the disappearance. Mr. Justice MARTIN, however, called attention to and seemed to stress the fact that the plaintiff wife in the *Frankish* case (p. 303) ' had no quarrel with defendant and * * * there was no reason for his deserting her.' That expression would appear unmistakably to indicate that the statute cannot be availed of in the case of a disappearance and continued absence due to intentional desertion, unless there are also present facts constituting a real, in contradistinction to a merely artificial ground for a belief that the life of the disappearing spouse had actually come to an end. That that is the correct view would seem to follow from what I believe to be the quite apparent fact that it was not the legislative intent so to change our matrimonial laws as to permit our courts to render judgments that would in practical effect be decrees of divorce upon the ground of desertion. In the instant case there can be no room for doubt that the disappearing wife did intend to leave her husband forever and did intend permanently to conceal herself from him. I find, therefore, that the petitioner's proofs did not warrant a belief that his wife is dead, and that those proofs, on the contrary,

tend strongly to support a belief that she is not dead. Petition dismissed."

Such was the view entertained by the learned official referee in the proceeding at bar. That the learned referee did not believe that the petitioner had made sufficient diligent search for his absent spouse clearly appears from the refusal of the learned referee to specifically find that there was evidence to warrant the petitioner's conclusion that she was dead. The learned referee refused to find the petitioner's proposed finding of fact No. 8, as follows:

" 8. That petitioner has made due and sufficient inquiry and search in an effort to obtain information as to the whereabouts of his said wife as to whether she be living or dead, and that he has found no evidence that she is now alive. That petitioner believes his said wife, the respondent, to be dead."

In short, the learned official referee, a jurist of acknowledged probity and long judicial experience, accustomed to the weighing of testimony, and who saw and heard the petitioner testify, refused to find that the petitioner had made " sufficient inquiry and search in an effort to obtain information as to the whereabouts of his said wife as to whether she be living or dead," and refused to find that there was under the evidence ground for the professed belief of the petitioner that his wife was dead.

What the petitioner is really seeking in this proceeding is to divorce his wife and to permit his remarriage, by reason of the wife's desertion and abandonment of the petitioner. I do not think that it was the intent of the Legislature to permit the dissolution of a marriage upon such grounds. What the Legislature did intend was to provide that absence for five years under circumstances sufficient to warrant the honest belief that the absent spouse was dead would justify a judicial dissolution of the marriage. The official referee has refused to find that the circumstances here presented justified the conclusion that the absent spouse was dead or that the petitioner believed her to be dead. I think such refusal to find as requested by the petitioner was amply justified under the evidence.

The facts and circumstances as shown by the testimony in this case are more indicative that the petitioner's wife is still living and has absented herself because of marital disagreements between herself and the petitioner, and that she is purposely keeping herself in hiding, than that she is dead, and that, therefore, there is nothing to justify the petitioner's claim that he believes his wife to be dead. Section 7-a expressly provides, in order to obtain the relief which he seeks, that the petitioner believes his wife to be dead. Unless the evidence justifies such belief, the petitioner is

not entitled to a dissolution of the marriage. In *Pitcairn* v. *Pitcairn* (119 Misc. 37) the petitioner applied for the dissolution of the marriage with his wife " on the ground of absence for five successive years last past." After setting forth the marriage of the parties and the defendant's absence for five years, the petitioner then stated: " That petitioner has made every effort within his power to ascertain the whereabouts of his wife and has failed in his every endeavor and believes that his said wife is dead; and that a diligent search has been made to discover evidence showing that said wife is living, and that no such evidence has been found." In the course of his opinion denying petitioner's application for an order of publication under section 7-a of the Domestic Relations Law, Mr. Justice MARSH, construing the statute in question, stated (at the bottom of p. 38): " The ground of the proceeding seems not to be absence for five years, but a presumption of death resulting from unexplained absence." I think such interpretation must be held to be the reasonable and rational one. In my opinion the official referee was entirely justified in recommending that the petition be dismissed.

The order appealed from should be affirmed.

O'MALLEY, J., concurs.

Order reversed and relief prayed for granted. Settle order on notice.