Joseph H. Lambert, Appellant, *v.* Mae Lambert, Respondent.

Fourth Department, March 13, 1935.

*Emil Rubenstein,* for the appellant.

*Vincent J. Loughlin,* for the respondent.

LEWIS, J. The appeal is from a judgment dismissing the complaint in an action by which the plaintiff seeks an annulment of his marriage to the defendant upon the ground that, at the time it was entered into, defendant's first husband, Alonzo T. Rogers, was living and that her marriage to him was still in force. The answer alleges, among other defenses, that prior to defendant's marriage to the plaintiff she had been awarded a judgment by the Supreme Court of this State dissolving her first marriage pursuant to section 7-a of the Domestic Relations Law. Our decision turns upon the question whether the court acquired jurisdiction in the proceeding by which defendant's first marriage is alleged to have been dissolved.

The facts are not in dispute. On May 9, 1925, the defendant, a resident of Buffalo, N. Y., signed a petition to the Supreme Court by which she sought the dissolution of her marriage to Rogers upon the grounds that he had absented himself for more than five years; that a diligent but unsuccessful attempt had been made to locate him and she believed him to be dead. A Supreme Court order was granted May 13, 1925, requiring publication of the statutory notice of presentation of the petition and the object thereof. It is important to note that neither defendant's petition in that proceeding nor the order requiring publication of the statutory notice was ever filed in the Erie county clerk's office, and, although there was testimony upon the trial herein that the notice was published for the required period of time in two Buffalo newspapers, it is conceded that proof of such publication was never filed.

On August 4, 1925, a hearing was held upon defendant's petition at an Equity Term of the Supreme Court in Erie county. No record of this hearing appears in the clerk's docket, although a copy of the stenographer's minutes thereof was introduced upon the trial of the instant case. On a date five weeks later the following notation appeared upon the docket of the Equity Term clerk: " September 10, 1925 — In the Matter of the petition of Cora DeBech Rogers for the dissolution of her marriage, etc. Order dissolving marriage. S. Ulrich." The attorney who represented the defendant at the hearing of August 4, 1925, testified in the case at bar that a decree which purported to dissolve defendant's

former marriage was signed September 10, 1925; that it was never entered or filed in the Erie county clerk's office and that it had been lost.

Immediately after the alleged decree was signed on September 10, 1925, which defendant claims dissolved her marriage with Rogers, she married the plaintiff. At that time, according to the record before us, defendant's first husband was living at Stroudsburg, Penn., and was alive at the time this action was tried.

No papers were ever placed on file in the Erie county clerk's office relating to defendant's proceeding to annul her marriage to Rogers until August 21, 1928 — nearly three years after her marriage to the plaintiff herein — when a Supreme Court order was entered, which defendant had secured *ex parte*, directing that her first marriage be dissolved *nunc pro tunc* as of September 10, 1925. The order states that it was based upon an affidavit by the same attorney who had represented defendant in the original annulment proceeding. The supporting affidavit was never filed.

It, therefore, appears that when the judgment was entered from which this appeal is taken, which dismisses plaintiff's complaint herein, the only formal record in the Erie county clerk's office relating to the proceeding by defendant under section 7-a of the Domestic Relations Law was the *ex parte* order of August 21, 1928, directing the dissolution of defendant's former marriage *nunc pro tunc* as of September 10, 1925.

The statute which is presently to be considered has been commonly known as the " Enoch Arden Act." It was added to the Domestic Relations Law by chapter 279 of the Laws of 1922, the design of the Legislature being to correct certain intolerable conditions which had been recognized as affecting the personal and property rights of a deserted spouse. (*Dodge* v. *Campbell*, 229 App. Div. 534, 538; affd., 255 N. Y. 622; *Frankish* v. *Frankish*, 206 App. Div. 301.) Although the purpose of the statute was benign, it was apparent the rights conferred by it might become the subject of grave abuse. Accordingly procedure under the act was well defined. After stating the requirements of the petition in a proceeding for the dissolution of a marriage, the statute provides: " 7-a. * * * The court shall thereupon by order require notice of the presentation and object of such petition to be published in the same manner as required for the publication of a summons in an action in the supreme court where service of such summons is made by publication." (Since amd. by Laws of 1934, chap. 57.)

The requirements for the service of a summons by publication are prescribed by rule 52 of the Rules of Civil Practice which provides in part: " If service be made by publication, * * * the

papers on which the order was made must be filed with the clerk on or before the day of the first publication."

By employing the word " must " the Legislature has thus made mandatory the procedure to be followed by one who would take advantage of section 7-a of the Domestic Relations Law. In addition it has been said: " The general rule in regard to the service of process established by centuries of precedent is that process must be served personally within the jurisdiction of the court upon the person to be affected thereby. Substituted service when provided by statute is in derogation of such general rule, and, consequently, the directions thereof must be strictly construed and fully carried out to confer any jurisdiction upon the court." ( *Korn* v. *Lipman*, 201 N. Y. 404, 406.) (See, also, *Hollender* v. *Wallace*, 167 App. Div. 217, 218; *Conklin* v. *Federal Trust Co.*, 176 id. 572, 574.) A rigid adherence to this rule of strict construction is warranted in this unique statutory proceeding where the sole reason for invoking the aid of the court to dissolve a marriage is the fact that the whereabouts of the absentee spouse has long been unknown and accordingly publication is the only effective means of giving the notice which endows the court with jurisdiction. The proceeding is of that type whereby the Supreme Court " is invested with a special limited statutory power, which can only be exercised under the limitations and circumstances prescribed in the statute." ( *People ex rel. Rogers* v. *Spencer*, 55 N. Y. 1, 4.)

Concededly the defendant as petitioner in the dissolution proceeding failed to file in the Erie county clerk's office her petition and the order requiring notice of the presentation thereof on or before the date of the first publication of such notice, as prescribed by statute. To avoid the legal consequences of such omission the defendant gave evidence upon the trial herein that when her attorney appeared in Equity Term, August 4, 1925, for the hearing upon her petition, he delivered all papers to the clerk who approved them before they were presented to the court. Upon this testimony the trial court in the present action has held that as the clerk of the Equity Term was a deputy county clerk of Erie county, he is presumed to have done his duty as a public officer and that delivery to him of papers in the dissolution proceeding preliminary to the hearing constituted a filing thereof within the requirements of the statute. That conclusion is based upon the ruling in *Fink* v. *Wallach* (109 App. Div. 718). In determining whether the authority of the case last cited is applicable to the record now before us we are influenced by the fact that the decision in the *Fink* case rested upon evidence peculiar to that action which is lacking in the case at bar. The distinction was noted by Judge LEHMAN, then Mr. Justice LEHMAN, at Special

Term, in *Wilson & Co.* v. *Banque Francaise Du Mexique* (124 Misc. 690). His opinion states (at p. 691): "An examination of the opinion of that case [*Fink* v. *Wallach, supra*] shows, however, that it is based upon a finding that orders of publication were at that time taken in charge by the clerk of Special Term, Part II, and were not taken down to the county clerk's files by him or his assistants in the regular course of their work. It was the duty of the clerk at that time to file all such papers, and a party cannot be held responsible for the failure of a public officer to perform his duty. * * *. [p. 692]: If it was not the duty of a clerk in Special Term, Part II, to file the order when signed in the county clerk's office, then there is no ground for a holding that the mere delivery of such an order to a clerk to obtain signature of the judge can constitute a filing, even though the attorney may have left it with the clerk with the intention that the clerk should so file it. I can find no warrant in the law for holding that it was the duty of such clerk to file a judge's order, or that he had authority to do so, for it affirmatively appears that such was not the custom or rule prevailing."

In the record now before us it appears from testimony by the clerk of the Erie County Equity Term that in 1925, when the hearing in defendant's dissolution proceeding was held, no custom or rule prevailed which required the clerk to file in the county clerk's office those papers which were delivered to him preliminary to a court hearing; also that upon receiving papers from attorneys in matters pending before the court it was not the clerk's custom to file the same with the county clerk but to return them to the attorneys for filing. This undisputed evidence makes the rule of *Fink* v. *Wallach* (*supra*) inapplicable to this case. In any event if the proof supported defendant's theory upon this phase of the case, the statute which required the filing of her petition and other papers " on or before the day of the first publication " of the notice would not have been satisfied by a filing thereof in court seventy-five days later and immediately before the hearing.

We conclude that failure to file the papers on which the order of publication was made, in accord with the requirements of the statute, deprived the Supreme Court of jurisdiction to make the decree of September 10, 1925, which purported to dissolve defendant's first marriage. As the defect was jurisdictional, not a mere irregularity, it could not be cured *nunc pro tunc* by the *ex parte* order of August 21, 1928. Upon that subject the Court of Appeals has recently reaffirmed the rule: "An order may not be made *nunc pro tunc* which will supply a jurisdictional defect by requiring something to be done which has not been done. * * * New

rights arising out of a matrimonial relationship cannot be created by a judicial declaration in 1933 concerning an assumed fact which concededly did not exist in 1925, and the existence of which was an essential element of a lawful marriage." (*Merrick* v. *Merrick*, 266 N. Y. 120, 122.) (See, also, *Stock* v. *Mann*, 255 id. 100, 103; *Guarantee Trust Co.* v. *P., R. & N. E. R. R. Co.*, 160 id. 1, 7.)

We have not overlooked the ruling in *Valz* v. *Sheepshead Bay Bungalow Corp.* (249 N. Y. 122). That case is distinguished by its special features which led to the decision reached and which differ in vital points from those now of record before us. We note, however, repeated reference in the opinion to the principle which has guided us to the conclusion we have reached in the instant case. For example (at p. 130): " The Legislature has the power to provide for service of the summons without the State by mail and publication. * * * There must, however, be a substantial compliance with these provisions of the statute; otherwise the court is without jurisdiction to render a judgment binding upon a non-resident who has not appeared. The Legislature must determine the steps which must be taken to confer jurisdiction upon the courts of the State. Notice to a defendant of the pendency of the action given in other manner is nugatory and may be disregarded."

Again (at p. 133): " The statutory notice is the basis of the court's jurisdiction; the courts have no power to hold that a notice not conveyed in a manner permitted by the statute may be equally effective."

The judgment from which appeal is taken should be reversed on the law and judgment granted in favor of the plaintiff for the relief demanded in the complaint, without costs. Conclusions of law numbered 1, 2 and 3 and conclusion of law designated as finding of fact numbered 10 should be disapproved and reversed.

All concur. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

Judgment reversed on the law and judgment ordered for the plaintiff for the relief demanded in the complaint, without costs. Conclusions of law numbered 1, 2 and 3 and conclusion of law designated as finding of fact numbered 10 disapproved and reversed.